# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION

**R. L. Ross,**

      Plaintiff,

    v.

**DONALD BACHAND**, individually And In His Capacity As Former Provost, Member Of The Professional Practices Committee, President Of Saginaw Valley State University (SVSU) and Member of the SVSU Board of Control ("BOC"); **JILL WETMORE** individually And In Her Capacity As Dean Of The SVSU College Of Business And Management And Member Of The Professional Practices Committee ("PPC"); **SHAUN BANGERT** Individually And In Her Capacity As Faculty Member Of SVSU And President Of The SVSU Faculty Association (SVSUFA); **ROBERT LANE**, Individually And In His Capacity As President And Past-President Of The SVSUFA; **DEBORAH BISHOP** Individually And In Her Capacity As Professor, Review Committee Chair, And SVSUFA Official; **CHRISTOPHER SURFIELD**, Individually And In His Capacity As Associate Professor, Review Committee Chair, And SVSUFA Official; **STEWART FRENCH** Individually And In His Capacity As Professor At SVSU And Official On The Executive Board Of The SVSUFA; **SAUN STROBEL** In Her Capacity As The UNI-SERV Director For The Michigan Education Association (MEA) For SVSU; **BROOKS BYAM,** Individually And In His Capacity As A Professor At Saginaw Valley State University; **HONG PARK,** Individually And In His Capacity As Professor At SVSU;

No. 1:14-cv-14122-TLL-PTM

Hon. Judge Thomas L. Ludington

Mag. Judge Patricia T. Morris

**WILLIAM WILLIAMSON**
Individually And In His Capacity As
Professor At SVSU; **ROBERT TUTTLE**
Individually And Professionally In His
Capacity As Professor At SVSU;
**MARK MCCARTNEY** Individually
And In His Capacity as a Professor at
SVSU; **SURENDER REDDY**
Individually And In His Capacity As A
Professor And Member Of The SVSU
PPC; **DEBORAH HUNTLEY**
Individually And In Her Capacity As
Dean, Provost, Vice President Of
Academic Affairs and Member of the
PPC; **DAVID ABBS,** Individually And
In His Capacity As A Member Of The
BOC; **SCOTT CARMONA,**
Individually And In His Capacity As A
Member Of The SVSU Board Of
Control; **CATHY FERGUSON,**
Individually And In Her Capacity As A
Member Of The SVSU Board Of
Control; **DAVID GAMEZ,**
Individually And In His Capacity As A
Member Of The SVSU Board Of
Control ; **ERIC GILBERTSON,**
Individually And In His Capacity As
President Of SVSU And A Member Of
The SVSU Board Of Control; **JEFFREY
MARTIN,** Individually And In Her
Capacity As A Member Of The SVSU
Board Of Control; **JENEE
VELASQUEZ,** Individually And In
Her Capacity As A Member Of The
SVSU Board Of Control; **LEOLA
WILSON,** Individually And In Her
Capacity As A Member Of The SVSU
Board Of Control; **JEROME YANTZ,**
Individually And In His Capacity As A
Member Of The SVSU Board Of
Control; **ERIK TRUMP,** Individually
And In His Capacity As A Member Of
The SVSU Professional Practices
Committee ("PPC"); **GRETCHEN
OWOCKI**, Individually And In Her
Capacity As A Member Of The PPC;
**PATRICIA CAVANAUGH**,
Individually And In Her Capacity As A
Member Of The PPC; **MARCIA
SHANNON**, Individually And In Her

2

Capacity As A Member Of The PPC;
**JOHN MOONINGHAM**, Individually
And In His Capacity As A Member Of
The PPC; **SUSIE EMOND**,
Individually And In Her Capacity As A
Member Of The PPC;  **JOHN DOE**
AND **JANE DOE** Individually And In
Their Capacity As Employees,
Administrators, or otherwise associated
with SVSU or SVSUFA;  **SAGINAW
VALLEY STATE UNIVERSITY;** and
**SVSU FACULTY ASSOCIATION;**

Defendants.

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Now comes Plaintiff R.L. Ross, by and through herself, as a *Pro Se*
Litigant, brings this action to enforce constitutional, civil, and common-
law rights arising out of Plaintiff's employment at Saginaw Valley State
University ("SVSU"). Plaintiff complains against Defendants' as follows:

**SUMMARY OF COMPLAINT**

*A.    Summary of Counts and Causes of Action*

This is an action by the plaintiff for the following: employment
discrimination on the basis of disability in violation of the **Americans
with Disabilities Act of 1990, as amended ("ADA") 42 U.S.C. §§ 12101,
*et. seq.*;** the **Civil Rights Act of 1866, Section 1981, and the Civil Rights
Act of 1871, Section 1983**; violation of Section 504 of the **Rehabilitation**

3

**Act of 1973, 29 U.S.C. § 794**; violation of the **Equal Protection Clause of the 14th Amendment**; violation of the **Michigan Elliott-Larsen Civil Rights Act** ("ELCR"), MCL 37.2101 et seq., and the **common law of the State of Michigan**; and violation of Michigan's **Persons With Disabilities Civil Rights Act**, M.C.L. § 37.1101, et. seq. ("PDCRA"); **breach of contract**; **breach of the collective bargaining agreement** ("CBA") between Saginaw Valley State University ("SVSU") and the Saginaw Valley State University Faculty Association ("SVSUFA") and the Michigan Education Association ("MEA") **breach of duty of fair representation** by the SVSUFA and MEA; **denial of procedural due process under the 14th Amendment and 42 USC 1983; civil conspiracy to deny Plaintiff's civil rights under the 14th Amendment and 42 U.S.C. § 1985(3); denial of substantive due process, including wrongful takings of liberty and property rights, under the 5th and 14th Amendments of the U.S. Constitution**; violation of the 4th Amendment prohibition against unreasonable searches and seizures; **wrongful discharge**; **retaliatory actions and discharge in violation of public policy**; **tortious interference with contract; tortious interference with a**

4

**business relationship; civil conspiracy**; **conspiracy to violate civil rights under 42 U.S.C. § 1985**;  invasion of privacy; intrusion into seclusion; false light; **promissory estoppel**; **breach of implied contract**; **fraud**; **misrepresentation**; **intentional infliction of emotional distress**; **abuse of privilege and malice**; **compelled self defamation**; and other claims that come to light following discovery and Plaintiff's consultation with employment and litigation experts.

This First Amended Complaint constitutes "the entire pleading as amended" as required by LR 15.1.

### B.    Amendments to Claims and Parties Under Rule 15

This First Amended Complaint is being filed as an amendment a matter of course under Fed. R. Civ. P. 15(a)(1)(B). Defendants SVSU, Bachand, and Wetmore filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) on January 9, 1015 and an answer to the original complaint on January 13, 2015. Rule 15(a)(1)(B) provides that "a party may amend its pleading as a matter of course" within "21 days after service of a responsive pleading" or "21 days after service of a motion under 12(b)". This pleading is being submitted within 21 days of Plaintiff's receipt of

5

Defendants' SVSU, Bachand, and Wetmore's Motion to Dismiss.

This First Amended Complaint includes additional counts for discrimination claims under the **Americans with Disabilities Act of 1990, as amended ("ADA") 42 U.S.C. §§ 12101,** *et. seq.***;** the **Civil Rights Act of 1866, Section 1981, and the Civil Rights Act of 1871, Section 1983**;  the **Rehabilitation Act of 1973, 29 U.S.C. § 794**; the **Elliott-Larsen Civil Rights Act** ("ELCR"), MCL 37.2101 et seq., and the **common law of the State of Michigan**; and the **Persons With Disabilities Civil Rights Act**, M.C.L. § 37.1101, et. seq. ("PDCRA").  Plaintiff received EEOC's "right-to-sue" letter for these claims on November 24, 2014.  (See **Exhibit 1.**)  Other counts and claims have been modified in response to Defendants' Answers and Defendants' SVSU, Bachand, and Wetmore's January 9, 2015 Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").

To the extent that Fed. R. Civ. P. 15(c) ("Rule 15(c)") applies to this pleading, if at all, these amendments relate back to the date of the original pleading under Rule 15(c)(1)(A) as the amendments to the original Complaint are being filed within the applicable statute of

6

limitations for such claims.  In addition, these amendments to the original Complaint assert claims "that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading" as provided in Rule 15(c)(1)(B).

The First Amended Complaint also corrects mistakes in the original Complaint by naming additional "parties against whom a claim is asserted".  Rule 15(c)(1)(C).  The original Complaint included Jane Doe and John Doe as parties.  The amended parties are members of the SVSU Board of Control ("BOC"), members of Professional Practices Committee ("PPC"), and members of review teams that made decisions related to Plaintiff's employment, tenure, and immediate termination.  To the extent that Rule 15(c)(1)(C) applies to this pleading, the requirements of the Rule have been met as "Rule 15(c)(1)(B) is satisfied" and the summons and First Amended Complaint being served on the amended and existing parties is within the "120 days after the complaint" was filed on October 27, 2014.

All of the claims in this First Amended Complaint are "derived from a common nucleus of operative fact" and thus are within the

7

jurisdiction and/or pendant jurisdiction of this Court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966).

### C.    Plaintiff's Claims are Not Barred by Immunity

Plaintiff's claims are not barred by governmental immunity, absolute immunity, qualified immunity or 11th amendment immunity. Plaintiff's claims for discrimination and retaliation based on Plaintiff's disability are not negligent tort claims and thus not barred by "governmental immunity" under Michigan's "Governmental Liability for Negligence Act", MCL 691.1401 et. seq.

### 1.    11th Amendment Immunity Does Not Bar Plaintiff's Claims

Plaintiff's claims are not barred by the 11th Amendment to the Constitution. Defendants' SVSU, Bachand and Wetmore very specifically stated that SVSU is a "political subdivision" of the State.  (ECF #13.) "The Eleventh Amendment largely shields States from suit in federal courts without their consent . . . ." *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 39, 115 S. Ct. 394, 400 (1994)  However, the "courts have consistently held that while states themselves are immune from suit in federal court, their subdivisions may not share in this immunity."

("Eleventh Amendment immunity does not extend to counties, municipal corporations, or similar political subdivisions of the state.") *Stewart v. Baldwin Cnty. Bd. of Educ.,* 908 F.2d 1499, 1509 (11th Cir. 1990) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 572 (1977)). "The Eleventh Amendment does not extend its immunity to units of local government". *Lincoln County v. Luning*, 133 U. S. 529, 530 (1890). The ***11th amendment*** "applies only to "one of the United States." It ***does not immunize political subdivisions of the state*** . . . even though such entities might exercise a "slice of state power". *Ram Ditta v. Maryland National Capital Park and Planning Commission,* 822 F.2d 456 (4th Cir., 1987).

The 11th amendment of the U.S. Constitution does not bar Plaintiff's claims for injunctive relief against individual state officials in their official capacities. See *MacDonald v. Vill. of Northport*, Mich. 164 F.3d 964, 970-72 (6th Cir.1999). "[C]laims for monetary damages against the Defendants in their individual capacities are not barred by the Eleventh Amendment." *State Emp. Bargaining Agent Coalition v. Rowland*, 718 F.3d 126, (2nd Cir., 2013).

9

### 2.     Governmental, Absolute and Qualified Immunity Are Not Bars to Plaintiff's Claims

Michigan's Supreme Court has stated "The rule of governmental immunity as to all ***political subdivisions*** of government is hereby abrogated as it has heretofore been abrogated as to municipal corporations, i.e., cities. ***No longer is the defense of governmental immunity for tort liability available, irrespective of whether the involved political subdivision is functioning "governmentally" or "proprietarily.***" (*Emphasis added*.) *Myers v. Genesee County Auditor*, 375 Mich. 1, 133 N.W.2d 190 (1965).

For the direct liability of a governmental agency, the element of intent is used "not to distinguish the nature of the tort, but to distinguish a governmental function from a nongovernmental function." *Smith v State, Dep't of Pub Health*, 428 Mich 540, 611, 410 NW2d 749 (1987), *aff'd sub nom Will v Michigan Dep't of State Police*, 491 US 58 (1989). However, the malice and wanton disregard for Plaintiff's rights Defendants engaged in do not fall under the category of "governmental function" and therefore governmental immunity does not apply. (The "intentional use or misuse of a badge of governmental authority for a purpose

unauthorized by law is not the exercise of a governmental function.")
*Smith v State, Dep't of Pub Health*, 428 Mich 540.

Michigan's Governmental Tort Liability Act ("GTLA") also
provides qualified immunity to members of a "board, council,
commission, or statutorily created task force of a governmental agency",
it does not apply to "political subdivisions".  Defendants' actions
constituted "conduct so reckless as to demonstrate a substantial lack of
concern for whether an injury results".  MCL 691.1407(8)(a).  "Summary
disposition is precluded in those cases where reasonable jurors could
honestly have reached different conclusions regarding whether the
employee's conduct amounted to gross negligence." *Vermilya v Dunham*,
195 Mich App 79, 489 NW2d 496 (1992).

To the extent that any Defendant in this case has any form of
immunity it is qualified at best and even if they had qualified immunity,
the specific facts contained in this complaint detailing the malice and bad
faith exercised by Defendants overcomes any claims of qualified
immunity.  *Odom v Wayne County*, 482 Mich 459 (2008).

See, also *Latits v Phillips*, 298 Mich App 109, 115; 826 NW2d 190

(2012). (Governmental employees who act with malicious intent are not

protected by immunity.)" Individual immunity is not warranted where

the government employee "acts maliciously or with a wanton or reckless

disregard of the rights of another." *Odom*, 482 Mich at 474 (citation

omitted). Willful and wanton misconduct is where the conduct

demonstrated "an intent to harm or, if not that, such indifference to

whether harm will result as to be the equivalent of a willingness that it

does."

## JURISDICTION

1.    Jurisdiction is proper in this case under §107(a) of the Americans

with Disabilities Act (ADA), 42 USC 12117, which incorporates by

reference §706 of Title VII of the Civil Rights Act of 1964, as amended, 42

USC 2000e-5.

2.    Plaintiff filed a charge of employment discrimination on the basis

of disability with the Equal Employment Opportunity Commission

(EEOC) within 300 days of the commission of unlawful employment

practices alleged in this claim.

12

3.      Plaintiff received notification of the right-to-sue letter from the EEOC on November 24, 2014, and has filed this complaint within 90 days of receiving the EEOC's notice of the right to sue. (See **Exhibit 1.**)

4.      Plaintiff is a citizen of the United States and the State of Michigan and resides in Oakland County.

5.      The discriminatory employment practices alleged in this complaint occurred while Plaintiff was employed by Saginaw Valley State University.

6.      Defendant SVSU is a "body corporate" (MCL  390.711) with its office and principal place of business in Michigan.

7.      Defendant SVSU is a person within the meaning of §101(7) of the ADA, 42 USC 12111(7), and §701 of Title VII of the Civil Rights Act of 1964, 42 USC 2000e.

8.      Defendant SVSU meets all of the requirements for employer status under the ADA. 42 USC 12111(5)(A)

9.      Jurisdiction is also proper under the United States Constitution, including the 4th and 14th Amendments, and 42 U.S.C. § 1983 (which provides a cause of action against any person who "subjects, or causes to

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…") and 42 U.S.C. § 1988 .

10.    Jurisdiction is proper under the equal protection clause of the 14th Amendment of the U.S. Constitution.

11.    Jurisdiction is also proper under 28 U.S.C. Sections 1331 and 1343 and the declaratory and injunctive relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42 U.S.C. Sections 1983 and 1988 and Rule 57 of the Federal Rules of Civil Procedure.

12.    This claim is being filed within six months of the time Plaintiff was notified, on April 26, 2014, that the SVSUFA denied Plaintiff's request to pursue a grievance against SVSU and subsequently SVSUFA denied Plaintiff's appeal to file a grievance under the terms of the CBA. Therefore this complaint is timely filed.

13.    Plaintiff is a resident of southeastern Michigan.

14.    All Defendants' are residents and all other entities residing or headquartered in the eastern district of Michigan.

15.    Claims based on Michigan law are "derived from a common nucleus of operative fact" and thus are within the jurisdiction and/or pendant jurisdiction of this Court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966).

## PARTIES AND BACKGROUND

16.    **Plaintiff R.L. Ross** was an Assistant Professor at SVSU from January 2008 through June 30, 2013.

17.    **Defendant Donald Bachand** was the Provost at SVSU from 2010 through June 30, 2013 and Vice President of Academic Affairs from 2006 through June 30, 2013. Defendant Bachand individually and in his capacity as Provost and Vice President of Academic Affairs:

   A. Defendant Bachand knowingly and intentionally conspired with Defendant Wetmore and other SVSU faculty, employees, and SVSUFA and MEA union officials to wrongfully influence the PPC's tenure decisions for the Plaintiff

   B. Acted to place Plaintiff in false light; conspired with other Defendants' and faculty members to harm plaintiff and

15

tortiously interfered with Plaintiff's contractual relationship with SVSU.

C. Contributed to and supported other faculty, Administrators and subordinates in creating a hostile work environment.

D. Took retaliatory and discriminatory actions against Plaintiff including allowing Defendant's Wetmore, Bishop, Bangert, French, Surfield, and Lane to retaliate and take discriminatory actions against plaintiff.

E. Fraudulently and intentionally misrepresented allegations about the Plaintiff to the SVSU Professional Practices Committee ("PPC") and other Faculty, Administrators and the members of the Board of Control ("BOC") that were harmful to the Plaintiff and tortiously interfered with Plaintiff's continued employment and contractual relationship with SVSU

F. Engaged in malicious, wanton, and wrongful behavior rising to a level of abuse of privilege.

G. Intentionally and knowingly acted with malice against Plaintiff.

H. Intentionally and negligently inflicted persistent, pervasive, and

16

severe emotional distress on Plaintiff.

18.    **Defendant Jill Wetmore** was a Professor in the Department of Law and Finance at SVSU's College of Business and Management ("CBM") from January 2008 through 2010 and Dean of the CBM from August 2009 through June 30, 2013. (See **Exhibit 2**.)

A. Defendant Wetmore, individually and as Dean of the CBM knowingly and with malice acted to appoint faculty  to Plaintiff's review committees for the purpose of providing negative reviews for the Plaintiff – regardless of the Plaintiff's actual performance.

B. Defendant Wetmore expressed her preference to Plaintiff that Plaintiff move from the Metro-Detroit area to the Saginaw area from January 2008 through April 2011. Defendant Wetmore used Plaintiff's residence in the Metro Detroit area as a basis for giving Plaintiff negative performance reviews. Contrary to the CBA, specific language in Defendant Wetmore's written reviews point to Plaintiff's "failure" to move to the Saginaw area as the grounds for Plaintiff's performance deficiency.

17

C. Defendant Wetmore was a member of the SVSU/SVSUFA Professional Practices Committee ("PPC") and acted to intentionally, and with malice, to wrongfully influence the PPC's tenure decisions for the Plaintiff.

D. Defendant Wetmore acted with hostility and malice towards Plaintiff for reasons unrelated to the Plaintiff's performance as an Assistant Professor.

E. Plaintiff received positive reviews prior to Defendant Wetmore becoming Dean in 2009

F. Beginning in the Fall of 2010, Defendant Wetmore selected and charged the members of the Plaintiff's review committees.

G. After Defendant Wetmore became the Dean, the Plaintiff suddenly started receiving negative comments in reviews from Defendant Wetmore's handpicked review committee members.

H. Defendant Wetmore's comments about Plaintiff were consistently false and misleading even though Plaintiff provided responses to Defendant Wetmore's inaccurate and malicious reviews.

18

I.  Defendant Wetmore refused to appoint the Plaintiff to College or University Committees that would allow the Plaintiff to acquire service credits towards tenure. Defendant Wetmore admitted to intentionally blocking Plaintiff from serving on such committees.

J.  Other faculty, including Mark McCartney, who had previously provided positive comments about Plaintiff's performance subsequently began to provide negative comments after Defendant Wetmore became Dean in 2010.

K.  Defendant Wetmore placed Plaintiff in false light with numerous students and colleagues including but not limited to students taking LAW 490 in or about 2011 and 2012.

L.  Defendant Wetmore's direct and coordinated negative reviews are in direct contrast to the previous reviews received by Plaintiff under Wetmore's predecessor and in direct contrast to the overwhelmingly positive reviews by the Plaintiff's Department and students in Plaintiff's courses.

M. Defendant Wetmore's comments on Individual Evaluation

19

Reports ("IER's") were consistently false, erroneous, and intentionally misleading and Defendant Wetmore refused to make corrections to IERs after Plaintiff provided evidence of the false, erroneous and misleading statements Defendant Wetmore wrote in IERs.

N. Defendant Wetmore not only intentionally failed to correct IER statements that were false, erroneous, and intentionally misleading, but Defendant Wetmore propagated the false, erroneous, and intentionally misleading information in IERs over a 3 year period.

O. Defendant Wetmore knowingly, intentionally, and with malice: acted to place Plaintiff in false light; conspired with other Defendants' and faculty members to harm plaintiff and tortiously interfered with Plaintiff's contractual relationship with SVSU; created a hostile work environment; took retaliatory and discriminatory actions against Plaintiff; fraudulently misrepresented allegations that were harmful to the Plaintiff; abuse of privilege and malice; and negligent and intentional

20

infliction of emotional distress.

19.     **Defendant Deborah Bishop** was a faculty member during the Plaintiff's term of employment at SVSU, Chair of Plaintiff's 2010-2011 pre-tenure review committee, and an officer of the SVSUFA.

A. As Chair of Plaintiff's 2010-2010 pre-tenure review committee, Defendant Bishop intentionally made false, fraudulent, and misleading statements in Plaintiff's review report, PPC file, and personnel file.

B. Defendant Bishop knowingly, intentionally, and with malice: acted to place Plaintiff in false light; conspired with other Defendants' and faculty members to harm plaintiff and tortiously interfered with Plaintiff's contractual relationship with SVSU; created a hostile work environment; took retaliatory and discriminatory actions against Plaintiff; fraudulently misrepresented allegations that were harmful to the Plaintiff; abuse of privilege and malice; and negligent and intentional inflication of emotional distress.

C. Defendant Bishop placed Plaintiff in a false light when in 2011

21

Defendant Bishop wrote in Plaintiff's review and PPC file that Plaintiff had been on a "4 year hiatus" of publication. Plaintiff was not hired until 2008 and SVSU had full knowledge of the date of Plaintiff's previous publications.

D. Between 2008 and 2013, Plaintiff published 2 law review articles, an article in the Environmental Law Report, as well as participating in numerous conferences.

E. Defendant Bishop, along with Defendants' Wetmore, Surfield, Bangert, Park, Williamson, Tuttle, Byam and French ignored Plaintiff's factual publication record and instead, with malice, sought to place Plaintiff in false light, conspired with other Defendants' and faculty members to harm plaintiff and tortiously interfered with Plaintiff's contractual relationship with SVSU; created a hostile work environment; took retaliatory and discriminatory actions against Plaintiff; fraudulently misrepresented allegations that were harmful to the Plaintiff; abuse of privilege and malice; and negligent and intentional infliction of emotional distress.

22

F.  Defendant Bishop, along Defendants' Wetmore, Surfield,
Bangert, Park, Williamson, Tuttle, Byam and French portrayed
Plaintiff in false light, exercised malice against Plaintiff, made
fraudulent statements about Plaintiff's publication record and
intentionally rated Plaintiff poorly on Plaintiff's reviews while
falsely claiming Plaintiff had not published enough articles even
though the SVSUFA PPC File Guide states that publications are
not required for faculty members to obtain tenure. Specifically,
page 4 of the SVSUFA PPC File Guide states:  "NOTE:
According to the Contract, publications are not necessary for
tenure or promotion! But they are welcome and they strengthen
your case. The reason is that Teaching at SVSU carries more
weight and importance."

G.  Defendant Bishop along with Defendants' Wetmore, Surfield,
Bangert, Park, Williamson, Tuttle, Byam and French breached
the CBA, placed Plaintiff in false light, and maliciously,
erroneously, and falsely characterized Plaintiff's teaching
without regard for student evaluations and comments as

23

required by the CBA.

20.   **Defendant Robert Lane** was a faculty member and the President of the SVSUFA between January 2008 and June 2013.

> A. Defendant Lane purported to represent Plaintiff as a Union Representative during a meeting with Plaintiff's 2010 – 2011 review committee and Defendant Wetmore when in fact Defendant Lane's actions were merely pretextual and instead Defendant Lane's actions were directly, intentionally, and with malice intended to harm the Plaintiff and instead support Defendant Wetmore, Bangert, Bishop, and Bachand and thereby in breach of Defendant Lane's duty of fair representation.

> B. Following Plaintiff's July 3, 2013 submittal of additional grievances against SVSU, Defendant Lane, as President of SVSUFA, issued an email response to Defendant Strobel expressing hostility and malice toward Plaintiff's grievances and thereby Defendant Lane breached his duty of fair representation.

21.   **Defendant Shaun Bangert** was a faculty member of SVSU and

24

Vice President of the SVSUFA when Plaintiff filed grievances against SVSU in May of 2013. Defendant Bangert was President of the SVSUFA on July 3, 2013 when Plaintiff filed additional grievances against SVSU.

A. Defendant Bangert purported to represent Plaintiff's interests on behalf of the SVSUFA when Plaintiff filed grievances in May and July 2013.

B. Defendant Bangert was a member of the Plaintiff's 2010-2011 evaluation team and therefore had a direct conflict of interest and should have been precluded from purporting to represent Plaintiff's interests during the grievance procedure.

C. Plaintiff was aware of the hostility and malice of Defendant Bangert towards the Plaintiff at a meeting with Defendants' Bangert and Strobel on May 7, 2013 and Plaintiff informed Defendant Strobel that Defendant Bangert had a conflict of interest and should not participate in any of the decision-making related to Plaintiff's grievances.

D. Defendant Bangert not only participated in the SVSUFA (pretextual) deliberations regarding Plaintiff's grievances as

well as being present and imposing unfair influence over the SVSUFA determination on Plaintiff's appeal of the original SVSUFA decision not to support Plaintiff's grievances.

E. Defendant Bangert knowingly, intentionally, and with malice: acted to place Plaintiff in false light; conspired with other Defendants' and faculty members to harm plaintiff and tortiously interfere with Plaintiff's contractual relationship with SVSU; created a hostile work environment; took retaliatory and discriminatory actions against Plaintiff; fraudulently misrepresented allegations that were harmful to the Plaintiff; abuse of privilege and malice; and imposed negligent and intentional infliction of emotional distress.

F. Defendant Bangert breached the CBA, placed Plaintiff in false light, and maliciously, erroneously, and falsely characterized Plaintiff's teaching without regard for student evaluations and comments as required by the CBA.

22.     **Defendant Brooks Byam** is a faculty member at SVSU, was on the Plaintiff's 2012 – 2013 review committee.

26

A. On or about October 16, 2012, Defendant Byam attended Plaintiff's 208 course for approximately 15 minutes to observe Plaintiff's teaching performance in the classroom.

B. On or about November 15, 2012, Defendant Byam attended Plaintiff's 208 course for the purported reason of handing out evaluation forms to students in the course so that students could evaluate Plaintiff's teaching performance.

C. On or about November 15, 2012, Defendant Byam asked Plaintiff to leave the room for the purported purpose of allowing students to confidentially fill out evaluation forms. Contrary to SVSU and SVSUFA protocol for student evaluations, Defendant Byam spent 20 – 30 minutes in Plaintiff's class time maligning Plaintiff in front of students, placing Plaintiff in false light in front of students; knowingly making false and fraudulent statements about Plaintiff to Plaintiff's students; trying to get students to make negative statements about Plaintiff, encouraging students to give negative ratings to Plaintiff on the student evaluation forms; and generally causing

27

great consternation and agitation among students in Plaintiff's classroom such that Plaintiff had to spend the remaining time of the course addressing student concerns about Defendant Byam's behavior in the classroom.

D. Even though the student reviews from November 15 2012 for the 208 course in which Defendant Byam attempted to get Plaintiff's students to make negative comments, Defendant Byam ignored the student's overwhelmingly positive comments and proceeded to falsely, fraudulently, and maliciously misrepresented Plaintiff's performance in the classroom.

E. Defendant Byam knowingly, falsely, fraudulently, and maliciously wrote negative comments in Plaintiff's 2012-2013 review and PPC so as to cause harm to plaintiff including tortious interference with contract, tortious interference with business relationship, false light, civil conspiracy, and other torts listed in this complaint.

F. Defendant Byam's knowingly false, fraudulent, and malicious oral and written statements about Plaintiff's teaching

28

performance directly contradict the overwhelmingly positive view of the students in the class.

G. On or about November 15, 2012, even after Defendant Byam attempted to have students give negative reviews to the Plaintiff, 92% of students reported that the Plaintiff was well prepared for class and that the course was well organized; 93% stated that the Plaintiff's presentation of material was well thought out and 100% of students indicated that the Plaintiff explained things clearly and in an understandable manner.

H. On or about November 15, 2012, students directly contradicted Defendant Byam's statements to them and instead 97% of students stated that they "learned a lot in this course" and that the "course increased [the student's] knowledge about the subject. 92% reported that the course helped students build their skills in the area.

I. Written student comments indicated that the Plaintiff was "one of [the student's] best professors ever"; that students enjoyed the course and thought the Plaintiff's weaving of current events

29

with cases and historical events was a very effective teaching technique; that it was a great course; that Plaintiff helped students build analytical skills, and challenged their way of thinking.

23.    **Defendant Stewart French** is a faculty member at SVSU, was on the Plaintiff's 2012 – 2013 review committee and an official on the SVSUFA Executive Board.

   A. Defendant French's statements in the Plaintiff's 2012 – 2013 review report and PPC were knowingly, falsely, fraudulently, malicious, and designed to cause harm to plaintiff including tortious interference with contract, tortious interference with business relationship, false light, civil conspiracy, and other torts listed in this complaint.

   B. Student comments in the course that Defendant French attended for approximately 10 minutes indicate that 100% of students thought that the Plaintiff was well prepared for class, that the material presented was well thought out, organized and that Plaintiff clearly explained complex topics. 86% of students

indicated that the course challenged them intellectually and 100% of students agreed that they learned a lot in the course, that the course increased their knowledge about the subject and helped them build skills in the area.

C. Defendant French's hostility, animus, and malice towards Plaintiff was palpable during Plaintiff's encounters with him during the 2012-2-13 review process as well as at the January 17, 2014 SVSUFA Executive Board meeting wherein the SVSUFA decided not to pursue Plaintiff's grievances

D. Defendant French's hostility, animus, and malice towards Plaintiff was so overt as to taint any decision made by the Executive Committee with respect to Plaintiff's grievances following the meeting on January 17, 2014.

E. Defendant French, formally or informally, participated or influenced the SVSUFA Executive Committee determination not to pursue Plaintiff's grievances even though it was a direct conflict of interest and his bias precluded any consideration of fair representation.

F. Defendant French breached the CBA, placed Plaintiff in false light, and maliciously, erroneously, and falsely characterized Plaintiff's teaching without regard for student evaluations and comments as required by the CBA.

24.    **Defendant Mark McCartney** is a Professor at SVSU and served as Chair of Plaintiff's 2012 -2013 AY evaluation wherein Defendant McCartney suddenly created new and pretextual negative comments about Plaintiff including issues that when Defendant McCartney was a member of Plaintiff's 2009 - 2010 review committee Defendant McCartney did not find fault with and did not use as a basis for downgrading Plaintiff's performance in teaching, service, and scholarship.

25.    **Defendant William Williamson** is a Professor at SVSU and served on Plaintiff's 2011 – 2012 evaluation team which, according to the terms of the CBA was supposed to be limited in scope to the Plaintiff's performance under Plaintiff's correction plan.

A. Defendant Williamson willfully, wantonly, and maliciously made assertions about Plaintiff's performance while allowing

32

Defendants' SVSU, Bachand, Wetmore, and Surfield to ignore
the plain language of the CBA and instead treat an evaluation
for a correction plan as a pre-tenure evaluation.

26.    **Defendant Hong Park** is a Professor at SVSU and was a member
of Plaintiff's 2010 – 2011 evaluation team.

   A. Defendant Park approached Plaintiff approximately 30 minutes
      after Plaintiff's correction plan meeting and stated directly that
      he just wanted Plaintiff to be around the office more often.

   B. Defendant Park willfully, wantonly, and maliciously made
      assertions about Plaintiff's performance while allowing
      Defendants' SVSU, Bachand, Wetmore, Bishop, and Bangert to
      ignore the plain language of the CBA and instead of evaluating
      Plaintiff's performance in accordance with the criteria of the
      CBA, allowed, facilitated, and conspired with Defendants'
      SVSU, Bachand, Wetmore, Bishop, and Bangert to continue to
      make misleading and erroneous assertions about Plaintiff's
      performance.

27.    **Defendant Saun Strobel** is the Uniserv Director of MEA for the

SVSUFA. Defendant Strobel knowingly, intentionally, and with malice: acted to place Plaintiff in false light; conspired with other Defendants' and faculty members to harm plaintiff and tortiously interfere with Plaintiff's contractual relationship with SVSU; failed to fairly represent Plaintiff and Plaintiff's grievances; and acted in a manner so as to negligently and intentionally inflict emotional distress on the Plaintiff.

    A. At a meeting in May 2013 regarding Plaintiff's request that SVSUFA file a grievance on Plaintiff's behalf, Plaintiff clearly stated to Defendant Strobel that having Defendant Bangert participate in the grievance determination or process was inappropriate as Defendant Bangert had a conflict of interest after serving on Plaintiff's 2010 – 2011 pre-tenure evaluation team.

28.    **Defendant Christopher Surfield** was a faculty member in the CBM at all times from January 2008 through June 2013.

    A. Defendant Surfield was an elected official with the SVSUFA during at least a portion of this time and as such wrongfully influenced the SVSUFA Executive Board's determination not to

34

pursue Plaintiff's grievances.

B. Defendant Surfield breached the CBA, placed Plaintiff in false light, and maliciously, erroneously, falsely and fraudulently mischaracterized Plaintiff's performance and teaching without regard for student evaluations and comments and without regard for reality as required by the CBA.

C. Defendant Surfield was chair of the Plaintiff's 2011 – 2012 review committee and knowingly, intentionally, and with malice:  acted to place Plaintiff in false light; conspired with other Defendants' and faculty members to harm plaintiff and tortiously interfere with Plaintiff's contractual relationship with SVSU; created a hostile work environment; took retaliatory and discriminatory actions against Plaintiff; stalked Plaintiff and took photographs of Plaintiff, Plaintiff's office, and Plaintiff's classrooms; fraudulently misrepresented allegations that were harmful to the Plaintiff; abuse of privilege and malice; and negligent and intentional infliction of emotional distress.

D. Defendant Surfield knowingly, wantonly, falsely, and

35

fraudulently mischaracterized Plaintiff's record of publication

so as to harm plaintiff while at the same time Defendant's

Wetmore, Bachand, Surfield, Bishop, and McCartney were

using Plaintiff's three publications in prestigious law reviews as

a critical part of the CBM's application to the Association to

Advance Collegiate Schools of Business ("AACSB") for

accreditation.

29.   **Defendant SVSUFA** is a non-profit corporation organized under

the laws of Michigan, and a local affiliated unit of the Michigan

Education Association ("MEA") and the National Education Association

("NEA") labor organizations.

30.   **Defendant SVSU** is a state chartered University within the State

of Michigan.

31.   Defendants' Surrender Reddy, Deborah Huntley, Erik Trump,

Gretchen Owocki, Patricia Cavanaugh, Marcia Shannon, John

Mooningham, and Susie Emond were on the SVSU Professional Practices

Committee ("PPC") (hereinafter "PPC" or "members of PPC") during

Plaintiff's employment and tenure reviews. This group of plaintiffs will

collectively be referred to herein as the "PPC" or "members of the PPC".

    A. Members of the PPC personally and professionally participated in: the discriminatory evaluation of Plaintiff for purposes of Tenure; the discriminatory disciplinary action against the Plaintiff by letter of June 28, 2013; the refusal to provide Plaintiff a due process hearing before denying Plaintiff liberty and property interests.

32.    Defendants' David Abbs, Scott Carmona, Cathy Ferguson, David Gamez, Jeffrey Martin, Jenee Velasquez, Leola Wilson, Jerome Yantz, and Eric Gilbertson were on the SVSU Board of Control ("BOC") during Plaintiff's employment at SVSU (hereinafter "BOC" or "members of BOC"). This group of plaintiffs will collectively be referred to herein as the "BOC" or "members of the BOC".

    A. Members of the BOC personally and professionally supervised the discriminatory actions against the Plaintiff including evaluation of Plaintiff for purposes of Tenure; the discriminatory disciplinary action against the Plaintiff by letter of June 28, 2013; the refusal to provide Plaintiff a due process

hearing before denying Plaintiff liberty and property interests.

## FACTS AND ALLEGATIONS

33.   Plaintiff was employed by SVSU in the CBM as an Assistant Professor from January 2008 through June 30, 2013.

34.   Plaintiff consistently received overwhelmingly positive Departmental reviews from January 2008 through June 30, 2013.

35.   Plaintiff's reviews from Dean Wafa in 2008 and 2009 were overwhelmingly positive.

36.   Plaintiff consistently received exceptionally high evaluations from students between January 2008 and June 30, 2013, including frequently being described as the "best professor" at SVSU.

37.   After Defendant Wetmore became the Dean of the CBM, Plaintiff began to inexplicably be subject by Defendant Wetmore to an adverse, hostile, discriminatory, retaliatory, and distressing work environment.

38.   The hostility and discriminatory and retaliatory work environment only got worse after the Plaintiff notified Defendant Wetmore and Defendant SVSU that Plaintiff suffered from a severe disability.

39.   When Plaintiff requested the Defendant Wetmore appoint Plaintiff

38

to various committees, Defendant Wetmore ignored such requests and instead accused Plaintiff of not providing adequate service to SVSU.

40.    Defendants' BOC, PPC, Bachand, and Wetmore materially breached the CBA by: failing to provide appropriate notice to Plaintiff under Section H.2.1.2; failing to follow the CBA provisions under Section H for correction plans; failing to follow the CBA provisions for notification of nonrenewal of contract under Section H.2.1.2; failure to follow the clear CBA provisions for termination under Section H; imposing an accelerated tenure review contrary to the clear language of the CBA; failing to follow the procedures set forth in the CBA for review of pre-tenure candidates; and for judging the Plaintiff's performance based on arbitrary and capricious criteria instead of the criteria set forth in the CBA; and for failing to provide Plaintiff due process and a hearing when requested by Plaintiff in accordance with the CBA.

41.    Defendants' BOC, PPC, Bachand, and Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam breached the CBA by failing to follow the procedures and substantive requirements for reviews of the Plaintiff for academic year 2010 – 2011,

39

2011 – 2012, and 2012 – 2013.

42.    Defendants' Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam conspired civilly to wrongfully deny tenure to Plaintiff.

43.    Defendant Lane breached the CBA by failing to comply with the provisions of the CBA regarding correction plans and subsequent reviews in Section H of the CBA.

44.    Defendants' BOC, PPC, Bachand, and Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam breached the CBA by failing to follow the procedures and substantive requirements for evaluation, PPC review, tenure review, and termination.

45.    Defendants' BOC, PPC, Bachand, and Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam breached the CBA by failing to provide independent and unbiased reviews of Plaintiff's performance in accordance with the criteria set forth in the CBA.

46.    Defendant Wetmore and Bachand allowed Defendant's, Bishop,

40

French, Surfield, Byam, and Bangert to make false, fraudulent, and erroneous comments about Plaintiff's performance in teaching, service to the University, and scholarship well all the while Defendant Wetmore and Bachand were using Plaintiff's accomplishments as a critical component of the CBM's application for re-accreditation to AACSB. Specifically, Defendant's Wetmore and Bachand stated in the August 2012 application to AACSB.

47.    For purposes of AACSB accreditation, Defendants' BOC, Wetmore and Bachand stated that Plaintiff's publications and scholarly activity met the standards of CBM, SVSU, and AACSB.

48.    Plaintiff's publications were listed as being in refereed journals on page 25 of Appendix 3E of the August 2012 application for accreditation to AACSB.

49.    Defendants' Wetmore and Bachand took credit for Plaintiff's publications as meeting the standards of the CBM, SVSU, and AACSB in Table 2-1 and Table 2-2 of the August 2012 AACSB application stating that Plaintiff had published 3 articles in peer reviewed journals and 1 article in a peer reviewed proceeding. Table 2-2 is particularly interesting

41

as it shows that Plaintiff has published more in 5 years than most other CBM faculty.

50.    Defendants' Wetmore and Bachand listed Plaintiff as having participated fully in CBM and University governance, committees, advising, professional development, curriculum development, and long term commitment. (See Table 51 of the August 2012 AACSB application.)

51.    Defendant's Wetmore and Bachand listed Plaintiff as being both Professionally Qualified ("PQ") and Academically Qualified ("AQ") to be a faculty member of CBM and SVSU. Where under the AACSB standards, PQ and AQ means the faculty "demonstrate activities that maintain the currency and relevancy of their instruction. Faculty members can maintain qualifications through a variety of efforts including production of intellectual contributions, professional development, and current professional experience". See ohttp://www.aacsb.edu/~/media/AACSB/Publications/white-papers/wp-aq-pq-status.ashxf

52.    According to CBM and SVSU, for purposes of AQ and PQ:

        A. The faculty member must have a terminal degree in the area of

teaching assignment, or in a related area. For faculty with a terminal degree which is not in the area of their teaching assignment, supplemental preparation in the form of professional development and evidence of intellectual contributions in the area of teaching is expected during each five year period. The faculty member, for evidence of continued professional development, is expected to produce intellectual contributions and engage in professional development which includes peer reviewed journal articles, conference proceedings, books, book chapters, and other possible intellectual outputs in the most recent five-year period. Consistent with AACSB standards, intellectual contributions in the CBM must exist in public written form and be subject to public scrutiny by academic peers or practitioners prior to publication. At a minimum, faculty members are expected to produce at any of the following levels: (1) two peer reviewed journal articles, (2) one peer reviewed journal article and two other peer reviewed intellectual contributions, or (3) four other peer reviewed

43

intellectual contributions (OIC). To assure an appropriate level of quality, a list of acceptable intellectual contributions is provided below, along with examples of activities that do not count toward qualification. In accord with our mission of integrating academic and experiential learning, faculty are encouraged to engage in a broad range of academic and professional arenas. Per prior policy decisions, graduate faculty are expected to produce a minimum of two peer-reviewed journal articles in the five year period.

B. Professionally Qualified (PQ) Faculty: At the time of hiring, the faculty member must have a master's degree in the area of teaching assignment or in a related field, professional certification, and/or professional experience relevant to the teaching assignment. Faculty with credentials in a related field which is not in the area of their teaching assignment are expected to undertake supplemental preparation in the form of professional development in the area of teaching. The professionally qualified faculty member is expected to stay

44

current in his or her professional field and to participate in
departmental and college sponsored developmental activities.
Demonstration of this currency should include activities that
demonstrate maintenance of intellectual/professional capital
and which may include intellectual contributions or activities
leading to intellectual contributions as defined below.
Professionally qualified faculty can become academically
qualified if they have substantial business experience and meet
the College's intellectual contribution requirements.

C. Defendants' Wetmore and Bachand admit in the AACSB
application that Plaintiff is fully qualified to be on the faculty at
SVSU, yet both Defendants' allowed for, and themselves made,
false, fraudulent, and malicious statements about Plaintiff and
placed writings containing false, fraudulent and malicious
statements in Plaintiff's reviews, PPC, and personnel file.

D. For purposes of tenure, Defendants' BOC, Wetmore and
Bachand changed their opinions from the AACSB assertions
and instead falsely asserted that the Plaintiff did not meet the

45

standards of CBM or SVSU.

E. Defendants' Surfield, Byam, Bishop, French, McCartney, and Williamson had knowledge that Plaintiff's qualifications were being touted in the SVSU application to AACSB while Defendants' were making false, fraudulent, and malicious statements about Plaintiff and placing false, fraudulent and malicious statements in Plaintiff's reviews, PPC and personnel file.

53. Plaintiff requested a hearing in front of the PPC in March 2013 by letter to Defendant Bachand, but no Defendant ever responded and never provided an opportunity for a hearing.

54. After wrongfully terminated Plaintiff on June 28, 2013, Defendant Bachand, on behalf of SVSU and the BOC, also sent Plaintiff a letter indicating Plaintiff was being disciplined by the PPC.

55. Plaintiff responded to the June 28, 2013 emails from Defendant Bachand but was never granted a hearing as required by the CBA.

56. Plaintiff was never granted the opportunity for a hearing regarding the threatened discipline or the immediate termination in Defendant

Bachand's June 28, 2013 emails.

57.     Defendants' SVSU and Bachand breached the CBA by submitting what should have been a correction plan review in 2012 to the PPC for tenure review in direct contradiction to the terms of the CBA which, if followed, would have resulted in Plaintiff's first tenure review being conducted during the 2012 – 2013 academic year.

58.     In accordance with the CBA, Plaintiff's second tenure review should have been conducted during the 2013 – 2014 academic year, but instead the Defendants' breached the contract and terminated the Plaintiff on June 28, 2013, effective June 30, 2014.

59.     Plaintiff promptly filed a grievance with the SVSUFA on May 1, 2013 upon notice that Defendants' SVSU, Bachand, and Wetmore had breached the contract by denying Plaintiff tenure based on fraudulent misrepresentations and artificial criteria unrelated to the provisions of the CBA and because by treating what should have been the first tenure review as the second tenure review, said Defendants' breached the CBA by wrongfully accelerating Plaintiff's tenure reviews.

60.     Immediately following Plaintiff's request to SVSUFA to file a

47

grievance on May 1, 2013, Defendants' SVSU and Bachand commenced an investigation into Plaintiff's private life in an attempt to intimidate Plaintiff into dropping the grievance.

61.    During a pre-hearing conference with Michigan Administrative Law Judge Julia Stern on October 27, 2013, SVSU Attorney John Decker and the Director of Human Resources Jack VanHoorelbeke admitted that an investigation had been commenced against the Plaintiff in the Spring of 2013.

62.    Defendant SVSUFA and Strobel submitted a grievance to Defendants' SVSU, BOC and Bachand on June 21, 2013.

63.    Exactly one week later, in response to Plaintiff's grievance, Defendant Bachand, with malice and animus, attempted to intimidate, harass, and discriminate and retaliate against Plaintiff by intentionally and blatantly breaching the CBA by sending Plaintiff a letter on the afternoon of June 28, 2013 informing Plaintiff that Plaintiff was being immediately terminated, in direct contravention of the CBA's prohibition of immediate termination except in cases the faculty member committed a crime or tort.

48

A. Plaintiff was immediately terminated even though Plaintiff did not commit a tort or crime as required by the CBA for immediate termination.

B. Plaintiff's immediate termination was extraordinary in that it so blatantly violated the provisions of the CBA as well as in light of the fact that another faculty member, Robert Thaler, who was convicted of possessing child pornography on his SVSU computer not terminated immediately, but instead was allowed to resign years later.

C. Defendant SVSU officials admitted that University officials knew Thaler had child pornography on his SVSU computer in or about January 2012.

D. Defendant SVSU allowed Thaler to continue teaching until April 2012 (when the Winter semester ended).

E. As of January 13, 2014, two years after SVSU became aware of the child pornography on Thaler's SVSU computer, Thaler was still an employee of SVSU.

F. Defendants' SVSU and Bachand did not terminate Thaler even

49

after he plead guilty to criminal conduct. Instead, Defendants'

SVSU and Bachand allowed Thaler to retire in 2014.

G. Thaler's actions would qualify as a case for immediate

termination under the CBA, but Defendants' SVSU and Bachand

did not pursue any such employment actions.

H. Defendants' SVSU and Bachand did (wrongfully) terminate the

Plaintiff, effective immediately on June 28, 2014 even though

Plaintiff did not commit and has never been accused or alleged

to have committed any of the offenses that would trigger

immediate termination under the CBA.

I. Defendants' SVSU and Bachand discriminated against Plaintiff

by imposing immediate termination in retaliation against

Plaintiff's request that the SVSUFA file a grievance against

SVSU. Though later withdrawn, without explanation, by

SVSUFA, the original grievance was filed with SVSU on June 21,

2014 and Plaintiff was immediately terminated one week later

on June 28, 2014.

64.    As further evidence of malice, animus, hostility, discrimination

50

and retaliation by Defendants, SVSU, BOC, and Bachand effectively backdated Plaintiff's discharge to June 15, 2013 by ceasing to pay Plaintiff's salary as of June 15, 2013.

65.    By stopping Plaintiff's pay on June 15, 2013, Defendants' SVSU, BOC, and Bachand knowingly and intentionally failed to pay Plaintiff for the full 2012 – 2013 academic year that ended on August 24, 2013.

66.    Defendants' SVSU, BOC and Bachand action to stop paying Plaintiff's salary on June 15, 2014 rather than on the contractual date of August 24, 2013, per the CBA, resulted in an effective taking of  15.4% of Plaintiff's salary.

67.    Defendants' SVSU, BOC and Bachand also stopped paying Plaintiff's benefits as of June 15, 2013 although the CBA calls for such payments to have been made until at least August 24, 2013.

68.    Plaintiff was notified on April 26, 2014, by the SVSUFA President, Shaun Bangert, that Plaintiff's appeal of the SVSUFA's denial to file a grievance on behalf of plaintiff had been denied.

69.    This cause of action is timely with respect to the SVSUFA and its officials breach of duty of fair representation as it is being filed within six

51

months of the time the Plaintiff the employee knew or should have

known of the union's final action or should have known of the

employer's final action, whichever occurs later.

## COUNT 1.  DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

70.     The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

71.     This suit is brought and jurisdiction lies pursuant to §107(a) of the

Americans with Disabilities Act (ADA), 42 USC 12117, which

incorporates by reference §706 of Title VII of the Civil Rights Act of 1964,

as amended, 42 USC 2000e-5.

72.     On April 27, 2014, Plaintiff filed a charge of employment

discrimination on the basis of disability with the Equal Employment

Opportunity Commission (EEOC) within 300 days of the commission of

the last unlawful employment practice alleged in this claim.

73.     Plaintiff alleges that the discrimination against the Plaintiff was

74.     Plaintiff received notification of the right-to-sue letter from the

EEOC on November 24, 2014, and has filed this complaint within 90 days

of receiving the EEOC's notice of the right to sue.

75.     Plaintiff is a citizen of the United States and the State of Michigan and resides in Oakland County.

76.     All the discriminatory employment practices alleged in this complaint occurred within the State of Michigan.

77.     Defendant is a person within the meaning of §101(7) of the ADA, 42 USC 12111(7), and §701 of Title VII of the Civil Rights Act of 1964, 42 USC 2000e.

78.     Defendant meets all of the requirements for employer status under the ADA. 42 USC § 12111(5)(A).

79.     The ADA prohibits employers, including the States, from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." §§ 12112(a), § 12111(2), (5), (7). To this end, the Act requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified

53

individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." § 12112(b)(5)(A)."  Board of Trustees of University of Alabama v. Garrett, 531 US 356 (2001)

80.     SVSU and SVSUFA are covered entities under the Americans with Disabilities Act ("ADA").

81.     The ADA definition of "employer" includes "any agent" of the employer. 42 U.S.C. § 12111(5)(A).

82.     SVSU constitutes an employer under the ADA.

83.     Defendants' Bachand, Wetmore, Surfield, Tuttle, Williamson, and Defendant members of the PPC and the BOC were agents of SVSU – and therefore "employers" under the ADA -- during the relevant time frame for this case.

84.     The ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

85.     "An employer's decision to discharge an employee on the basis of disability or an employer's failure to provide a reasonable

54

accommodation to a disabled employee can constitute the type of unlawful discrimination barred by the statute." _Keith v. Cnty. of Oakland_, 703 F.3d 918, 923 (6th Cir. 2013).

86.    "Disability" is defined to include "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1)(A).

87.    To conclude that a person is disabled under this provision, a court must find (1) there is a physical impairment, (2) which affects a major life activity identified by the person, and (3) the impairment substantially limits that life activity. _Bragdon v. Abbot_, 524 U.S. 624, 631 (1998).

88.    The 2008 Amendments to the ADA expanded the definition of "major life activity" to include "the operation of a major bodily function." 42 U.S.C. § 12102(2)(B).

89.    "An impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in

55

order to be considered substantially limiting." Id. While "not every

impairment will constitute a disability within the meaning of this

section[,]" 29 C.F.R. § 1630.2(j)(1)(ii), courts are to construe the phrase

"`substantially limits' . . . broadly in favor of expansive coverage." Id. at §

1630.2(j)(1)(i) (also advising that "`[s]ubstantially limits' is not meant to

be a demanding standard")."

90.    Plaintiff provided written documentation to SVSU from Plaintiff's

physicians stating that Plaintiff suffered from a respiratory related

disability that affected major life activities such as walking, sleeping,

breathing, and speaking.

91.    The Plaintiff demonstrated that she was disabled sufficient for

SVSU to instruct Plaintiff that any absences related to her disability

would be considered as absences under the Family Medical Leave Act

("FMLA"). (See **Exhibit 7**.)

92.    Plaintiff is academically and professionally qualified for the

position held by Plaintiff (with or without reasonable accommodation).

(See **Exhibit 3**.)

93.    The Plaintiff suffered numerous adverse employment decisions.

A. Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam discriminated against Plaintiff by using Plaintiff's disability as a basis for giving Plaintiff negative written reviews in 2012 and 2013.

B. Defendants' Bachand, members of the PPC and members of BOC discriminated against Plaintiff by accelerating Plaintiff's tenure review in violation of Section H of the CBA regarding review of a Correction Plan.

C. Defendants' Bachand, members of the PPC and members of the BOC discriminated against Plaintiff by using the discriminatory evaluations as a basis for denying tenure to the Plaintiff.

D. Plaintiff put SVSU on notice by disclosing Plaintiff's disability to Defendant Wetmore in November 2011 and by letter dated January 25, 2012.

E. Plaintiff specifically informed SVSU on January 25, 2011 that Plaintiff was concerned that Plaintiff's disability would result in a negative performance review.

57

F.  Defendants' SVSU, BOC, PPC, Bachand terminated Plaintiff on
June 28, 2013 -- without notice in violation of the CBA – based
on negative reviews due to Plaintiff's disability.

G. Plaintiff was replaced in her job by a non-disabled person.

94.    The Sixth Circuit Court of Appeals has held that employees such as
the Plaintiff are eligible for prospective injunctive relief for violations of
the ADA. *Carten v. Kent State University*, 282 F.3d 391 (6th Cir. 2002).

95.    Plaintiff's claims under the ADA are not tort claims and thus not
barred by "governmental immunity" under Michigan's "Governmental
Liability for Negligence Act", MCL 691.1401 et. seq.

96.    Plaintiff's claims are not barred by the 11th Amendment to the
Constitution.

97.    "The Eleventh Amendment does not extend its immunity to units
of local government" and Defendants' claim that SVSU is analogous to
units of local government in that it is a "political subdivision" of the
State. (ECF #13)  See _Lincoln County v. Luning_, 133 U. S. 529, 530 (1890).
("These entities are subject to private claims for damages under the ADA
without Congress' ever having to rely on § 5 of the Fourteenth

Amendment to render them so. It would make no sense to consider constitutional violations on their part, as well as by the States themselves, when only the States are the beneficiaries of the Eleventh Amendment.") The **11th amendment** "applies only to "one of the United States." It **does not immunize political subdivisions of the state** . . . even though such entities might exercise a "slice of state power".  Ram Ditta v. Maryland National Capital Park and Planning Commission, 822 F.2d 456 (4th Cir., 1987).  The 11th amendment of the U.S. Constitution does not bar Plaintiff's claims for injunctive relief against individual state officials in their official capacities. See MacDonald v. Vill. of Northport, Mich. 164 F.3d 964, 970-72 (6th Cir.1999).

98.     "[C]laims for monetary damages against the Defendants in their individual capacities are not barred by the Eleventh Amendment."  *State Emp. Bargaining Agent Coalition v. Rowland*, 718 F.3d 126, (2nd Cir., 2013).

99.     On or about August 2013, Plaintiff requested the Defendants' provide information regarding any faculty member who, after disclosing a qualifying disability, was granted tenure but Defendants' would not provide any evidence that any other such person(s) exist.

59

100.   Plaintiff suffered adverse and disparate treatment after disclosing that she had a qualifying disability.

    A. Plaintiff contacted the Faculty Secretary, in accordance with the CBA, to provide notification when she was ill and/or her disability was exacerbated and she would miss work.

    B. The Faculty Secretary would then begin processing the appropriate paperwork.

    C. After such notifications were made, Defendant Wetmore would contact Plaintiff demanding that Plaintiff file additional paperwork regarding any absences. (See **Exhibit 4**.)

    D. Defendant Wetmore did not contact any other faculty who were ill or unable to attend due to a serious exacerbation of a disability and demand that they file any subsequent paperwork.

    E. Defendant Wetmore's contact with the Plaintiff to demand additional paperwork be filed was intended by Defendant Wetmore to harass and intimidate the Plaintiff, to create a hostile work environment, and to interfere with Plaintiff's civil rights.

60

101.   Defendants' SVSU, BOC, PPC, Bachand, and Wetmore notified the

faculty of CBM before notifying the Plaintiff that Plaintiff was denied

tenure.

   A. After being notified, sometime in the Spring of 2013, that

      Plaintiff was not granted tenure, CBM faculty shunned Plaintiff.

   B. In February 2013, Professor Gary Clark encountered the Plaintiff

      in the hallway outside of a classroom and stated to Plaintiff "I

      thought they got rid of you already."

   C. On June 23, 2013, Defendant McCartney informed a student of

      the Plaintiff that Plaintiff had been terminated – this was 5 days

      before Plaintiff learned on June 28, 2013 that she was being

      immediately terminated.

102.   At all relevant times, Plaintiff was an individual with a disability

within the meaning of §3(2) of the ADA, 42 USC 12102(2).

103.   Plaintiff's respiratory condition constitutes a physical impairment

that substantially limits one or more of her major life activities, has a

record of the impairment, and is regarded by Defendant as having the

impairment.

104.   Plaintiff is a qualified individual with a disability as that term is defined in the ADA. 42 USC 12111(8). Plaintiff is an individual who, with reasonable accommodation, can perform the essential functions of her job.

105.   In rejection of Plaintiff's request for accommodation, Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam refused to allow Plaintiff to reschedule office hours.

106.   In rejection of plaintiff's request for accommodation, Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam refused to allow Plaintiff to provide instruction online during periods of the exacerbation of the Plaintiff's disability.

A. Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam refusal to allow a reasonable accommodation to Plaintiff to provide such instruction is contrary to the recent Sixth Circuit holding in *EEOC v. Ford Motor Company*, No. 12-2484 (6th Cir. 2014)

("because technology has advanced, most modern jobs are amenable to remote work arrangements. As we discussed above, many jobs continue to require physical presence because the employee must interact directly with people or objects at the worksite. See, e.g., *Melange*, 482 F. App'x at 84 (custodian). We are merely recognizing that, given the state of modern technology, it is no longer the case that jobs suitable for telecommuting are "extraordinary" or "unusual." *Vande Zande*, 44 F.3d at 545; *Smith*, 129 F.3d at 867–68. When we decided *Smith* in 1997, we responded to the world as it then existed; however, in the intervening years, communications technology has advanced to the point that it is no longer an "unusual case where an employee can effectively perform all work-related duties from home." *Smith*, 129 F.3d at 867–68.")

107.    Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam failure to make reasonable accommodations for Plaintiff constitutes discrimination against Plaintiff in respect to the terms, conditions, or privileges of

63

employment. This conduct constitutes a violation of the ADA. 42 USC 12112(b)(5)(A).

108.   Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam failed to undertake any good-faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation for Plaintiff.

109.   Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam conducted themselves with malice or with reckless indifference to Plaintiff's federally protected rights.

110.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam engaged in a pattern of continuous violations of the ADA since January 25, 2012 when Plaintiff filed a written complaint for discrimination with the SVSU HR Director.

111.   As a direct and proximate result of Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities.

## COUNT 2.  FAILURE TO ACCOMMODATE IN ACCORDANCE WITH THE ADA

112.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

113.   Failure to provide reasonable accommodation is a violation of the ADA. 42 U.S.C. 12111(9)(B).

114.   Plaintiff specifically requested various reasonable accommodations such as occasional changes to Plaintiff's schedule.

115.   When Plaintiff attempted to change Plaintiff's schedule as a reasonable accommodation, Defendants' SVSU, Bachand, Wetmore, Surfield, Tuttle, Williamson, and Defendant members of the PPC and the BOC used the Plaintiff's schedule changes (and request for schedule changes) as a basis for negative reviews in January 2012 and May 2012.

116.   Defendants' SVSU, Bachand, Wetmore, Surfield, Tuttle, Williamson, and Defendant members of the PPC and the BOC took adverse employment actions against Plaintiff in January 2012 (negative review based on disability), May 2012 (negative review based on disability), August 2012 (denial of tenure based on correction plan

65

instead of being based on first tenure review as required by the CBA),

January 2013 (negative review based on disability), on or about February

2013 (PPC and BOC determination to deny Plaintiff tenure based on her

disability), May 2013 (final determination to deny Plaintiff tenure and to

categorize it as a second tenure denial even though the plain language of

the CBA classified it as a first tenure review), and June 2013 (immediate

termination in violation of the CBA).

117.   Due to Plaintiff's disability, Plaintiff was unable to complete her
PPC file based on the review committee's arbitrary deadlines.

   A. Plaintiff repeatedly requested short extensions to complete
      Plaintiff's PPC file.

   B. Defendants Bachand, Wetmore, PPC, BOC, Surfield,
      Williamson, Tuttle, Byam, French, and McCartney
      discriminated against Plaintiff by using Plaintiff's request for
      short extensions as a basis for making negative comments about
      Plaintiff's performance.

      a. Defendants Bachand, Wetmore, PPC, BOC, Surfield,
         Williamson, Tuttle, Byam, French, and McCartney expressly

and explicitly denied the Plaintiff any reasonable
accommodations.

b. No Defendant offered or provided any reasonable
accommodation to the Plaintiff.

118.   Plaintiff repeatedly requested that she be allowed to make minor
adjustments in her office hours (non-instructional time) but Defendants
SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson,
McCartney, Williamson, and Byam refused.

A. Defendant Surfield took pictures of Plaintiff's notices that were
posted on her office door when she attempted to make minor
adjustments to her office hours.

B. Plaintiff notified SVSU's Human Resources Director Jack
VanHoorelbeke that Defendant Surfield was taking
photographs of Plaintiff's office and notices posted on Plaintiff's
office door and that his behavior made the Plaintiff feel she was
being stalked.

C. Defendant McCartney wrote Plaintiff up in her review for
switching office hours in December 2012 due to Plaintiff's

disability.

D. Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Tuttle, Williamson, McCartney, Williamson, and Byam used Plaintiff's attempts at reasonable accommodations as a basis for making adverse comments about Plaintiff missing office hours.

119.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Williamson, Tuttle, Byam, French, and McCartney failed to undertake any good-faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation for Plaintiff.

120.   All of Defendants' failures to provide reasonable accommodations were similar in nature.

121.   Defendants denied Plaintiff tenure and terminated Plaintiff on June 28, 2014 because Plaintiff requested reasonable accommodations.

122.   Defendants' failure to make reasonable accommodation to Plaintiff has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

68

## COUNT 3.  RETALIATION AGAINST PLAINTIFF IN VIOLATION OF THE ADA

123.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

124.   SVSU is an employer that is a covered entity under Section 101(2) of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111(2).

125.   SVSU engaged in unlawful employment practices at its Redford, Michigan facility in violation of Section 503(a) of the ADA, 42 U.S.C. §12203(a), including but not limited to terminating Plaintiff's employment in retaliation for Plaintiff complaining to SVSU's Human Resource Director and the SVSUFA about discrimination against the Plaintiff due to her disability.

126.   The unlawful employment practices and retaliating against Plaintiff were intentional.

127.   The unlawful employment practices and retaliating against Ross were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

128.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Surfield,

69

Williamson, Tuttle, Byam, French, and McCartney retaliated against Plaintiff because Plaintiff complained to Jack VanHoorelbeke about Plaintiff being subject to discrimination based on her qualifying disability.

A. Defendants Wetmore, Surfield, Williamson, Tuttle, Byam, French, and McCartney used Plaintiff's disability as a basis for retaliating against Plaintiff by making negative comments in Plaintiff's performance reviews.

B. Defendants' SVSU, BOC, PPC, Bachand, used those negative comments to:

C. Ignore the CBA requirement that for academic year 2011-2012 Plaintiff's review should have been limited to the scope of the correction plan.

D. Violate the CBA by accelerating Plaintiff's tenure review schedule by using Plaintiff's correction plan review as the basis for denying Plaintiff tenure in August 2012.

E. Continue the violation of the CBA by continuing to accelerate Plaintiff's tenure review schedule by denying her tenure the

second time in 2013 even though the CBA calls for that review
to have been conducted in 2013 – 2014.

129.   Defendant Wetmore retaliated against Plaintiff by refusing to put
Plaintiff on any University committees after Plaintiff informed Wetmore
of Plaintiff's disability in November 2011.

130.   Defendant Wetmore retaliated against Plaintiff by refusing to put
Plaintiff on any University committees after Plaintiff filed a complaint
for discrimination with SVSU HR Director Jack VanHoorelbeke on
January 25, 2012.

131.   Defendants SVSU, BOC, and Bachand retaliated against Plaintiff by
terminating Plaintiff without notice and in violation of Section H 2.3 of
the CBA.

132.   Defendants SVSU, BOC, and Bachand retaliated against Plaintiff by
terminating Plaintiff on June 28, 2013, but stopping paying wages and
benefits to Plaintiff effective June 15, 2013.

133.   Defendants SVSU, BOC, and Bachand retaliated against Plaintiff by
ceasing to pay Plaintiff for the period of June 15, 2013 through August
24, 2013 as required by Section D. 1 of the CBA.

71

134.   Defendants SVSU, BOC, and Bachand retaliated against Plaintiff by denying her a "terminal year" (as required by the CBA) after denying her tenure.

135.   The ADA "prohibits intimidating, threatening, or interfering with any person in the exercise or enjoyment of any rights under the act. 42 USC 12203(b). An individual states a claim under this section by asserting that he or she was forced to give up rights under the ADA by adverse employment actions or threats. *Brown v City of Tucson*, 336 F3d 1181 (9th Cir 2003)."  Employment Law in Michigan: An Employer's Guide ch 6 (Richard J. Seryak et al eds, ICLE 2d ed 2005.

136.   Plaintiff was forced to give up rights under the ADA due to Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Williamson, Tuttle, Byam, French, and McCartney's discriminatory and retaliatory acts against the Plaintiff.

137.   Defendants' SVSU, BOC, Bachand, and Wetmore continued taking retaliatory actions against the Plaintiff after Plaintiff filed this lawsuit.

138.   On December 4, 2014 Defendants' SVSU, BOC, Bachand and Wetmore sent Plaintiff a letter threatening to seek Rule 11 sanctions

against Plaintiff for having filed her complaint.

139.   Defendants next sent Plaintiff a Motion for Sanctions under Rule 11 that was dated January 16, 2015.

140.   Defendants repeated threats of sanctions are unlawful. Defendants are attempting to punish the Plaintiff and deter others from taking similar measures.

141.   The "desire to punish the individual for engaging in protected activity (i.e. filing a lawsuit), and to deter others from acting similarly, is what makes it retaliation." See *Brissette v. Franklin County Sheriff's Office*, 235 F. Supp. 2d 63 (D. Mass. 2003). *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008)

142.   Most Federal employment law statutes explicitly prohibit retaliation. See e.g. 29 U.S.C. 216(a)(3) (FLSA)2; 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. 2000e-3(a) (Title VII)3; 42 U.S.C. 12203(a) (ADA).

   A. Even where there is no explicit ban, courts are likely to find that one is implied, as the Supreme Court did in the context of Title IX. See Jackson v. Birmingham Bd. of Ed., 125 S. Ct. 1497 (2005). (Court explained the primacy of retaliation proscriptions to the

national goal of eliminating discrimination embodied in Title IX.
The same analysis is equally applicable to other employment
statutes.)

143.   Plaintiff is an individual that was and is engaged in a statutorily
protected activity e.g., complaining that the Defendants breached the
Collective Bargaining Agreement ("CBA") and Defendants
discriminated against Plaintiff because of Plaintiff's qualifying disability.
See *Treglia v. Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)

144.   Defendants act of retaliation through threatening sanctions satisfies
the adverse employment action requirement for purposes of a retaliation
claim.

A. There is a close temporal connection and the causal connection
is straightforward. "When an employee's participation in
statutorily protected activity is the determining factor in an
employer's decision to take [sic] adverse employment action,
that action is invalid regardless of the employer's intent." *EEOC
v. Bd. of Governors of State Colleges and Universities,* 957 F.2d 424,
428 (7th Cir. 1992).

B. The causal relationship element may be established by circumstantial evidence, including that the adverse action followed closely in time after the plaintiffs engaged in protected activity. *Gordon v. NY City Bd of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000)

145.   The goal of anti-retaliation provisions is to "maintain[] unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997).

146.    Unlike the underlying discrimination or other employment claim, actionable retaliation is not limited only to adverse changes in the employment relationship, such as reductions in pay or termination. See *EEOC v. Die Fliedermaus,* 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999; see also *Robinson,* 519 U.S. 337 (holding that anti-retaliation provisions apply equally to former employees); *Gliatta v. Tectum, Inc.,* 211 F. Supp. 2d 992, 1008 (S.D. Ohio 2002) (retaliation ban applies to conduct beyond traditional employment decisions); compare 42 U.S.C. § 2000e-2(a) (discrimination) and 42 U.S.C. § 2000e-3(a) (retaliation). Rather, any non-employment retaliation "reasonably likely to deter … protected activity"

75

can constitute proscribed retaliation. See EEOC Compliance Manual,

Section 8: Retaliation (http://www.eeoc.gov/ policy/compliance.html),

pp. 8-13, 8-14.

## COUNT 4.  DISCRIMINATION AND RETALIATION IN VIOLATION OF MICHIGAN'S ELIOT LARSEN CIVIL RIGHTS ACT

147.   The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

148.   At all material times, Plaintiff was an employee, and Defendant

was her employer, covered by and within the meaning of the Michigan

Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

149.   Plaintiff's disability was the reason and/or at least one factor that

made a difference in Defendant's decision to terminate Plaintiff from her

position as an Assistant Professor.

150.   Had Plaintiff not suffered a disability, she would not have been

denied tenure.

    A. Plaintiff requested information from Defendant SVSU in

        accordance with the Michigan Freedom of Information Act

        asking whether any other faculty member who disclosed that

they had a disability was ever granted tenure.

   B. Defendant did not provide any evidence that Defendants SVSU, BOC, PPC, Bachand, or Wetmore had ever granted tenure to anyone who had previously disclosed they suffered a disability.

   C. Upon information and belief, Defendant has not granted tenure to anyone who prior to obtaining tenure had disclosed to SVSU that the applicant for tenure had a disability.

151.   Had Plaintiff not suffered a disability, she would not have been terminated.

152.   Upon information and belief, no similarly situated non-disabled person has ever been terminated in the same manner and fashion as Plaintiff.

153.   Had Plaintiff not suffered a disability, she would not have been terminated immediately in violation of the CBA.

154.   Upon information and belief, no similarly situated non-disabled person has been terminated immediately from SVSU.

155.   Defendants, through agents, representatives, and employees, was predisposed to discriminate on the basis of disability and acted in

accordance with that predisposition.

156.   Defendants, through agents, representatives, and employees, treated Plaintiff differently from similarly situated non-disabled employees in the terms and conditions of employment, based on unlawful consideration of disability.

157.    Defendant's actions were intentional in disregard for Plaintiff's rights and sensibilities.

158.   Upon knowledge and belief, no other similarly situated individual has been treated as harshly as Plaintiff.

159.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

## COUNT 5.  DISCRIMINATION IN VIOLATION OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

160.   The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

161.   Michigan's Persons with Disabilities Civil Rights Act ("PDCRA") prohibits discrimination by Michigan employers against persons with disabilities. MCL 37.1201 et. seq.

162.   SVSU is an "employer" as defined under Michigan's Persons With Disabilities Civil Rights Act ("PDCRA"), M.C.L. §37.1201(b).

163.    Pursuant to the PDCRA, an employer is prohibited from retaliating or discriminating against a person because the person has opposed a violation of this Act. MCL §37.1602(a).

164.   At all material times, Plaintiff was an employee, and Defendant SVSU was Plaintiff's employer, covered by and within the meaning of the Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1201 et seq.

165.    Plaintiff's asthma and respiratory disease constitutes a disability, as that term is defined by and within the meaning of the PDCRA, MCL 37.1103(e).

166.   At the time of his termination, Plaintiff's asthma and respiratory disease was unrelated to Plaintiff's ability to perform the duties of a

faculty member with Defendant SVSU, BOC and is unrelated toher

qualifications for employment as a faculty member.

167.   Plaintiff was discriminated against, within the meaning of the

PDCRA, when Defendant SVSU terminated Plaintiff because of her

disability due to respiratory disease.

168.   Plaintiff's disability due to respiratory disease was a determining

factor in Defendant SVSU's, and its agents, decision to terminate Plaintiff

and preclude her from returning to work.

169.   The actions of Defendant SVSU, BOC and its agents,

representatives, and employees were intentional in disregard for the

rights and sensibilities of Plaintiff.

170.   All Defendants discriminatory actions were constant and frequent

after Plaintiff notified Defendant that Plaintiff suffered from a qualifying

disability.

171.   Defendants' filed negative comments in Plaintiff's employment

record and PPC file based on Plaintiff's asthma and disability due to

respiratory disease.

172.   Upon information and belief, no similarly situated non-disabled

person has had similar negative and adverse treatment in the evaluation
and review process.

173.   Defendants' Wetmore and Bachand refused to allow Plaintiff to
make minor alterations to Plaintiff's schedule to accommodate Plaintiff's
qualifying disability.

174.   Defendants' Wetmore and Bachand refused to appoint Plaintiff to
any committees that would have improved Plaintiff's chances of
receiving tenure.

175.   Defendants' refused to correct erroneous and negative comments
in Plaintiff's employment record and PPC file regardless of repeated
notifications that Plaintiff suffered a qualifying disability.

176.   Defendants' denied tenure to Plaintiff twice after Plaintiff notified
Defendants' that Plaintiff suffered from a qualifying disability.

177.   Upon information and belief, no disabled person(s) has ever been
granted tenure after disclosing the existence of a qualifying disability.

178.   Defendants' SVSU, Bachand, and Wetmore took the extreme and
unwarranted measure of terminating plaintiff on June 28, 2013 without
notice due to Plaintiff's qualifying disability.

81

179.   Defendant's Bachand, Wetmore, Surfield, Williamson, Tuttle, McCartney, French, and Byam and all members of the PPC and the BOC were supervisors for purposes of evaluating Plaintiff's performance and tenure evaluations.

180.   Defendant's Bachand, Wetmore, Surfield, Williamson, Tuttle, McCartney, French, and Byam and all members of the PPC and the BOC were supervisors for purposes of evaluating Plaintiff's performance and tenure evaluations.

181.   Defendant's Bachand, Wetmore, Surfield, Williamson, Tuttle, McCartney, French, and Byam and all members of the PPC and the BOC were at all times acting as agents for SVSU.

182.   Agents and supervisors are defined as employers under PDCRA. See, *Elezovic v Ford Motor Co,* 472 Mich 408, 697 NW2d 851 (2005).

183.   Defendant's Bachand, Wetmore, Surfield, Williamson, Tuttle, McCartney, French, and Byam and all members of the PPC and the BOC are all individually, jointly, and vicariously liable for discrimination against Plaintiff.

184.   Plaintiff is a person with a disability as that term is defined in the

82

Persons with Disabilities Civil Rights Act because she has a determinable physical characteristic (severe, persistent asthma) that substantially limits one or more of her life activities including breathing, walking, sleeping.

185. Defendants discriminated against Plaintiff because of her disability.

186. Defendants denied Plaintiff equal opportunity.

187. Defendants denied Plaintiff equal protection under the law.

188. As a direct and proximate result of Defendants unlawful discrimination, Plaintiff has been damaged.

189. Upon knowledge and belief, no similarly situated person has been treated as harshly as Plaintiff.

190. Plaintiff will be irreparably harmed if she is not granted equitable and injunctive relief along with monetary damages.

191. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including the loss of earnings and earning capacity; loss of fringe and pension benefits; mental and emotional distress; humiliation and embarrassment;

loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue a gainful occupation of choice.

## COUNT 6.  RETALIATION IN VIOLATION OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

192.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

193.   The PDCRA prohibits retaliating against persons who oppose violations of the PDCRA. MCL 37.1602.

194.   SVSU is an "employer" as defined under Michigan's Persons With Disabilities Civil Rights Act ("PDCRA"), M.C.L. §37.1201(b).

195.    Pursuant to the PDCRA, an employer is prohibited from retaliating or discriminating against a person because the person has opposed a violation of this Act. MCL §37.1602(a).

196.   Upon knowledge and belief, no other similarly situated person has been treated as harshly as Plaintiff.

197.   Defendants' continually and frequently retaliated against Plaintiff after Plaintiff notified Defendant Wetmore personally and SVSU

formally that Plaintiff had a qualifying disability.

## COUNT 7.  DISCRIMINATION AND RETALIATION IN VIOLATION OF THE REHABILITATION ACT

198.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

199.   Federal law prohibits public institutions from discriminating against people with disabilities. See, The Rehabilitation Act of 1973, 29 U.S.C. § 791, et. seq. and related regulations under 34 C.F.R. § 104.1 et. seq.

200.   Section 504 (29 U. S. C. § 794) provides that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under" any program or activity receives Federal financial assistance.

201.   The U.S. Department of Education ("ED") regulations prohibit the denial of benefits or forms of discrimination under any program or activity which receives Federal financial assistance. 34 C.F.R. § 104.4(a).

202.   U.S. Department of Education regulations prohibit limiting a person with a disability from "the enjoyment of any right, privilege,

advantage, or opportunity enjoyed by others receiving an aid, benefit, or service". 34 C.F.R. § 104.4(b)(vii).

203.   U.S. Department of Education regulations require that recipients of federal financial assistance make reasonable accommodations for known physical limitations. 34 C.F.R. § 104.12.

204.   SVSU receives federal financial assistance in the form of loans, grants, and other means.

205.   SVSU, through their agent, Defendant Wetmore, was aware in November 2011 that Plaintiff suffered from a qualifying disability under state and federal law.

206.   On or about January 25, 2012, Plaintiff formally notified SVSU that Plaintiff suffered from a severe and qualifying disability.

207.   Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Williamson, Tuttle, Byam, French, and McCartney discriminated against Plaintiff by denying her reasonable accommodation for her disabilities, including occupational stress, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., as amended.

208.   Upon knowledge and belief, no similarly situated individual has

been treated as harshly as Plaintiff.

209.   Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Williamson, Tuttle, Byam, French, and McCartney conducted themselves intentionally, deliberately, willfully, and in callous disregard of Plaintiff's rights.

210.   By reason of Defendants SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Williamson, Tuttle, Byam, French, and McCartney discrimination, Plaintiff is entitled to all legal and equitable remedies available under the Rehabilitation Act.

## COUNT 8.  INTERFERENCE WITH PLAINTIFF'S RIGHTS AND RETALIATION UNDER THE FMLA

211.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

212.   "The FMLA's remedial provisions state that an employer who violates the FMLA may be liable to an eligible employee "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Under this Circuit's precedent and *Ex parte Young*, the Eleventh Amendment does

87

not bar suits for equitable, prospective relief, such as reinstatement, against state officials in their official capacity." *Diaz v. Michigan Department of Corrections*, 703 F.3d 956 (6th Cir. 2013).

213.   The statute of limitations for willful violations of the FMLA is three years. 29 USC 2617(c)(2).

214.   On March 20, 2012, SVSU's Human Resources Department instructed Plaintiff that any absences related to Plaintiff's disability would fall under FMLA.

215.   Defendants' Wetmore, Bachand and the BOC willfully interfered with Plaintiff's rights under the FMLA and retaliated against Plaintiff every time Plaintiff had an absence related to FMLA.

216.   Upon knowledge and belief, no other similarly situated individual has been treated as harshly as Defendants treated Plaintiff.

217.   Upon information and belief, no non-disabled faculty member was subject to similar harassment and retaliation.

### COUNT 9.  BREACH OF THE COLLECTIVE BARGAINING AGREEMENT

218.   The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

219.   Defendant SVSU breached the CBA in substantive and material ways that irreparably harmed the Plaintiff.

220.   Defendant's Bachand, Wetmore, and SVSU breached the substantive terms of the CBA by unilaterally deciding to ignore the provisions related to correction plans and correction plan reviews under Section H of the CBA and to instead negate and render moot those contractual provisions by instead using Plaintiff's correction plan as a basis for denying tenure.

    A. There are no provisions in the CBA allowing for a correction plan to be used as the basis for denial of tenure.

    B. Upon information and belief, no similarly situated non-disabled person has ever had a correction plan used as the basis for denial of tenure.

    C. Defendants' Wetmore and Bachand wrongfully used what was supposed to be a review of the Plaintiff's performance under the March 2011 correction plan as the basis for the first tenure denial in August 2012.

89

D. After receiving an evaluation report on May 23, 2012 that clearly exceeded the scope of the Plaintiff's correction plan, in direct contradiction to the provisions of the CBA which provides for a separate process for correction plans, Plaintiff submitted a response memo dated June 12, 2012 to Defendant Surfield and Defendant Wetmore and the remainder of the review committee as well as the Human Resource Director, Jack VanHoorelbeke, that the use of the correction plan as a mechanism for review of tenure by the PPC was directly contrary to the plain language of the CBA.

E. Upon information and belief, no non-disabled pre-tenure faculty has ever had what was supposed to be a review of a correction plan become the basis for the first denial of tenure.

F. Plaintiff received no response to the June 12, 2012 response memo.

G. Instead, Plaintiff received notice from Defendant Bachand in August 2012 that the Plaintiff's correction plan had been used as a basis for denying tenure.

221.   Defendants' Bachand, Wetmore and SVSU knowingly and intentionally violated the CBA by failing to follow the timeline for pre-tenure reviews. Section H.2.1.2 of the CBA clearly provides "Pre-tenure appointments shall be issued by March 31 of each fiscal year. A pre-tenure faculty member shall be given written notice, in the letter of appointment for the third pre-tenure year, of tenure granted or the extension of pre-tenure status through the third year."

222.   Section H 2.1.2. of the CBA clearly provides for 3 pre-tenure years – not including a an extra year provided for by the correction plan clause of the CBA (Sections H 2.2.6 and H 2.2.8).

223.   Section H 2.2.8 specifically requires that an evaluation team be appointed the Academic Year following faculty member's filing of a correction plan to evaluate the faculty member's performance under the correction plan.

224.   Defendants' Bachand, Wetmore, and SVSU blatantly ignored the correction plan provisions of the CBA and instead used what, according to the CBA, was supposed to be an evaluation of Plaintiff's performance under the correction plan that Plaintiff filed in March 2011 but instead

91

the Defendants' used that evaluation as the first denial of tenure.

225.   Defendants' Bachand, Wetmore, and SVSU continued to ignore the plain language of the CBA by classifying, according to the CBA, what was supposed to have been Plaintiff's first tenure review as Plaintiff's second and final tenure review.

226.   Defendants' SVSU, BOC and Bachand knowingly and intentionally violated the CBA by failing to follow the provisions of H 2.3.5 regarding the denial of tenure and Article K regarding grievance procedures.

Section H.2.3.5 of the CBA states

> "If tenure is denied either the first or second time, the Association Committee for Contract Grievances may grieve the decision directly to the GRC whose decision is binding. ***After tenure has been denied the second time, and upheld by the GRC, the contract for a faculty member cannot be renewed.***"

227.   Section H 2.3.5 of the collective bargaining agreement states that "After tenure has been denied the second time, and upheld by the GRC [SVSU's Grievance Resolution Commission], the contract for a faculty member cannot be renewed." (Emphasis added.)

228.   The second denial of tenure for the ICP has never been upheld by SVSU's Grievance Resolution Commission.

92

229.   There is no provision in the contract for termination of faculty due to the second denial of tenure unless and until such denial is UPHELD by the Grievance Resolution Commission (GRC).

230.   The clear language of the CBA mandates that nonrenewal of a contract for pre-tenure faculty must be preceded by the tenure denial being upheld by the GRC and the GRC has never addressed or held any hearings regarding the Plaintiff's tenure and thus according to the CBA, Defendants' SVSU, BOC and Bachand acted wrongfully.

231.   Defendant Lane made a statement at the SVSU BOC February 11, 2013 meeting, the meeting preceding notice to the Plaintiff that tenure had been denied, that "The tenure process guarantees due process which on our campus means you have a hearing and evidence is presented." Defendant Lane's statement to the SVSU BOC is blatantly false as Plaintiff was denied due process and was never given a hearing (even though Plaintiff requested a hearing on March 20, 2013) and Plaintiff was never given unbiased or factual information regarding basis for low evaluation scores.

232.   Defendants' recognized the Plaintiff's claims for breach of the CBA

by very specifically and precisely changing the language of the CBA in the sections addressed by the Plaintiff in correspondence to the various review committees, the Dean, the Provost, the Vice President of Academic Affairs, SVSUFA, MEA, and SVSU. Specifically, Defendants' SVSU, BOC and SVSUFA made the following changes in the first CBA subsequent to Plaintiff's notification to the parties of the various contractual breaches:

A. Defendants' SVSUFA and SVSU modified the CBA which was ratified by the SVSUFA and MEA and put in place on July 1, 2014.

B. Defendants' breached the CBA by failing to follow the clear language of H. 2.2.6 that provided "The faculty member will submit by March 10 . . . to the evaluation team, respective department chairperson, and respective dean a plan to correct the inadequacies. Failure to submit such a plan shall be sufficient cause for non-renewal of contract regardless of date."

C. Plaintiff timely filed a correction plan on March 10, 2011.

D. Plaintiff met as requested with Defendants' Lane, Bangert,

Wetmore, and Bishop as well as Plaintiff's chairperson, Wayne Mackie and Professor Hong in April 2011 to discuss the correction plan as required by H.2.2.8 of the CBA.

E. Defendants' Wetmore and Bishop were openly hostile to Plaintiff at the H.2.2.8 meeting. Defendant Bangert specifically stated that the evaluation team was not saying the Plaintiff was a bad teacher but instead that the Plaintiff was supposed to "be around more" on campus – even though there is no such contractual requirement.

F. Within 30 minutes following the H.2.2.8 meeting, in the hallway between Plaintiff and Professor Hong's office, Professor Hong stated that Plaintiff just 'needed to be in the office more'.

G. The statements by Professor Hong and Defendant Bangert indicate that the Plaintiff was being judged on criteria that was not in the CBA but instead was based on some personal preference by Defendants' Wetmore, Bangert, and Bishop.

H. The concept that the Plaintiff was, and continued to be, judged on criteria outside of the CBA is also evidenced by Defendant

95

Wetmore's September 28, 2012 Individual Evaluation Report

("IER") of the Plaintiff which stated "The department and

evaluation teams consider her campus visibility to be

inadequate."  There was no requirement in the CBA for the

Plaintiff to meet any requirements for "campus visibility".

Defendant

233.   Section H.2.2.8 of the CBA specified that the correction plan was to

be incorporated in the evaluation record of the Plaintiff and that "the

correction plan will be evaluated by the next year's evaluation team. If

no evaluation team is normally scheduled for the next year, a special

team shall be appointed as provided in H.2.2.1."  SVSU failed to appoint

an evaluation team per H.2.2.8 and H.2.2.1 and instead appointed a first

year tenure review team in direct contradiction to the clear language of

the CBA.

234.   Section H.2.2.9 of the CBA, titled "New Evaluation" states that

following the "Review Meeting" required by H.2.2.8, and "in which a

correction plan has been established, an evaluation team shall undertake

a re-evaluation which shall be completed by January 30 of the next

appointment year. The re-evaluation shall be based solely upon the plan for correction." SVSU failed to conduct an evaluation "based solely upon the plan for correction" as required by Section H.2.2.9 of the CBA and instead conducted a wide ranging evaluation, directly contrary to the provisions of the CBA, and most importantly, instead of a correction plan review, SVSU unilaterally converted the 2011-2012 review into a first tenure review by the PPC.

    A. There is no CBA provision allowing for a correction plan evaluation to be converted to a first tenure review and thus SVSU's actions were a clear and material breach of the CBA.

235.  Defendant SVSU has not presented any evidence that any other similarly situated faculty had a correction plan considered for their first tenure review.

236.  After Plaintiff informed SVSU, BOC and SVSUFA that treating a correction plan as the basis for a tenure review was in violation of the CBA, SVSU, BOC and SVSUFA/MEA conspired to modify the CBA such that the version effective on July 1, 2014 contains different provisions for correction plans and now does not allow pre-tenure faculty to even

97

submit correction plans. This represents a substantive and material change to the CBA that supports Plaintiff's contentions that the original language of the CBA fully allowed for the Plaintiff to submit a correction plan and then to be evaluated based solely on the correction plan.

237.   The fact that Defendants' changed the CBA following Plaintiff pointing out how the Defendants' breached the CBA regarding the correction plan provisions is evidence that the Defendants' were aware of the clear language of the CBA and intentionally modified that language to now read as they wish it to be interpreted.

238.   Defendants' knowledge of the clear meaning of the CBA regarding the correction plan illustrates their knowing, wanton, and blatant actions to breach the CBA by denying the Plaintiff the contractual right to follow the procedures in the CBA regarding a correction plan.

239.   The CBA mandates that faculty be notified by November 1st of the academic year that their contract will not be renewed for any subsequent academic years. Specifically, H.2.1.2 of the CBA states:

240.   A pre-tenure faculty member shall be given written notice, in the letter of appointment for the third pre-tenure year, of tenure granted or

the extension of pre-tenure status through the third year. If the faculty member is not granted tenure or pre-tenure status is not extended through the third year, written notice shall be given by November 1 of the second pre-tenure year.

241.   According to the CBA, to terminate Plaintiff by June 2013, Plaintiff should have been notified by November 1, 2012, that Plaintiff's contract would not be renewed. Plaintiff did not receive any such notification. The only notification received was on June 28, 2013 that Plaintiff was being immediately terminated.

242.   SVSU has not treated other faculty similarly. This is a clear, blatant, and malicious breach of Section C.3 of the CBA which provides "This agreement shall be applied equally in all cases with respect to wages, hours, terms and conditions of appointment. In no case shall arbitrary, capricious or discriminatory action be taken. It shall be applied without regard to race, creed, religion, color, sex, sexual orientation, national origin, age, marital status, disability or any other condition protected by stated University policy or by law." (Emphasis added.)

243.   The CBA mandates that pre-tenure faculty be granted a terminal

year after being denied tenure for the second time. Defendants' SVSU,

BOC and Bachand unilaterally denied that opportunity to Plaintiff in

violation CBA, including but not limited to, Sections C and H.

244.   Evidence of a terminal year is clear from the notification

requirement under H 2.1.2 of the CBA.

245.   The Defendant SVSU had to provide notification to Plaintiff by

November 1 of the academic year preceding the Plaintiff's terminal year

that the contract was not going to be renewed any longer. For the

Plaintiff, this notice should have been provided between August 25, 2013

and November 1, 2013 so that Plaintiff's terminal year would have been

academic year 2013 – 2014.

246.   If Defendant SVSU did not wish for Plaintiff to teach a terminal

year, and wanted to terminate Plaintiff after academic year 2012 – 2013,

then according to the CBA, Defendant SVSU should have provided

notification of such termination by November 1, 2012. Plaintiff did not

receive any such notification.

247.   Plaintiff was scheduled to teach, as publicly posted on the SVSU

website, for Fall 2013 and Winter 2014. This listing of Plaintiff on the

schedule of classes was available until July 2013. Plaintiff relied to her detriment on this listing as an indication of a terminal year of employment.

248.   Defendants' Stroebel and Bangert, during a meeting with Plaintiff on May 7, 2013, stated to Plaintiff that contract called for and SVSU provided a terminal year.

249.   In accordance with Section H 2.2.3 "Methods and Schedules" of the CBA, the Plaintiff had a contractual right to request and receive a hearing before the PPC provided such a request is made by March 20th. Plaintiff submitted a detailed memo to Defendants' Bachand and Wetmore on March 20, 2013 requesting to avail herself of the CBA right to appeal to the PPC. Plaintiff was not granted any hearing in front of the PPC nor any other SVSU committee or member of the administration or BOC.

250.   Defendants' Wetmore, Bishop, Bachand, and Surfield knew that their false, fraudulent, and malicious statements about Plaintiff that Defendants' placed in Plaintiff's review files, PPC files, and personnel files were directly contrary to the statements Defendants' were certifying

101

as true and correct to the AACSB.

251.   Defendants' SVSU, BOC and Bachand wantonly, willfully, knowingly, and maliciously breached the CBA to the detriment of the Plaintiff.

252.   Defendants' breaches of the CBA are against clear manifestations of intent.  *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir.1983).

253.   Defendants' breaches render Sections A 8., C 3., D 1., F 2.4.5., H 1., H 1.2., H 2.2., H 2.2.2., H 2.2.5., H 2.2.6., H 2.2.9., H 2.2.10., H 2.2.8., H.2.3.2., H 2.3.4., H 2.3.5., H 2.3.7., H 2.3.9., K2.1., and K2.2., nugatory in direct contravention of the 6th Circuit's instructions on interpretation of CBA's.  *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir.1983).

## COUNT 10. BREACH OF DUTY OF FAIR REPRESENTATION

254.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

255.   The Saginaw Valley State University Faculty Association ("SVSUFA") is a non-profit corporation organized under the laws of Michigan) and affiliated with the National Education Association ("NEA") and the Michigan Education Association ("MEA") and

hereinafter SVSUFA, NEA, and MEA will be referred to collectively as
SVSUFA unless otherwise noted.

256.   Defendant SVSUFA is the exclusive representative of SVSU faculty
members under the CBA.

257.   Defendant SVSUFA is a "labor organization" under 29 U.S.C. §
402(i).  *Ala. Educ. Ass'n v. Chao*, 595 F. Supp. 2d 93, 2009 U.S. Dist. LEXIS
7913 (DDC Feb. 4, 2009)

258.   Defendant SVSUFA had a duty to fairly and adequately investigate
Plaintiff's claims and to make decisions regarding the representation of
employees that are free from bias and prejudice and that are not
arbitrary or made in bad faith. *Hines v Anchor Motor Freight, Inc*, 424 US
554 (1976); *Vaca v Sipes*, 386 US 171 (1967).

259.   Defendant SVSUFA had a duty to "act without fraud, bad faith,
hostility, discrimination, arbitrariness, caprice, gross nonfeasance,
collusion, bias, prejudice, willful, wanton, wrongful and malicious
refusal, personal spite, ill will, bad feelings, improper motives,
misconduct, overreaching, unreasonable action, or gross abuse of its
discretion in processing or refusing or failing to process a member's

grievance." *Knoke v. East Jackson Public School District*, 201 Mich App 480,

506 NW2d 878 (citing *Lowe v Hotel & Restaurant Employees Union*, 389

Mich 123 [Page 487] , 146; 205 NW2d 167 (1973) at 146-

147; *Goolsby v Detroit*, 419 Mich 651, 663-664; 358 NW2d 856 (1984).

260.   It is well established that a "union breaches its duty of fair

representation when its conduct toward a member of the designated unit

is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes* 386 US 171

(1967)

261.   Defendant SVSUFA failed in its duty of fair representation by

failing to take any substantive and material steps to evaluate or pursue

Plaintiff's grievances against SVSU.

262.   Defendant SVSUFA failed in its duty of fair representation by

allowing the same faculty members who conducted Plaintiff's pre-tenure

reviews to sit in judgment, formally or informally, over whether

SVSUFA would pursue Plaintiff's grievance.

263.   Defendant Bangert was and still is the President of the SVSUFA

and chair of the SVSU Executive Board as well as a member of the

SVSUFA Grievance Committee and a member of the 2010 – 2011 pre-

104

tenure review committee that evaluated Plaintiff.

264.   Defendant Bishop was and still is the Vice President of the
SVSUFA, a member of the SVSUFA Executive Board, and chair of the
SVSUFA Grievance Committee and was the chair of the 2010 – 2011 pre-
tenure review committee that evaluated Plaintiff.

265.   Defendant Lane was President of the SVSUFA and chair of the
SVSUFA Executive Board and, as former President is still on the
SVSUFA Executive Board. Defendant Lane reacted with animus and
hostility towards Plaintiff when Plaintiff asked SVSUFA to file a
grievance over Plaintiff's wrongful termination.

266.   Defendants' Bangert, Bishop, Lane, Tuttle and French were on the
SVSUFA Executive Board and were charged with making a
determination as to whether or not to pursue Plaintiff's grievance.

267.   Defendants' Bangert, Bishop, Tuttle and French served on
Plaintiff's pre-tenure review committees and then sat on the SVSUFA
Executive Board that decided that the SVSUFA would not pursue
Plaintiff's grievances.

268.   Defendant Lane objected to Plaintiff's filing of additional

105

grievances after Plaintiff was notified that SVSU had immediately terminated Plaintiff. Defendant Lane, former President of SVSUFA, was a member of the Executive Board that decided the SVSUFA would not pursue plaintiff's grievances.

269.   Defendants' Bangert, Bishop, Tuttle, Surfield, and French were also on review committees for Plaintiff and thus had a direct conflict of interest in serving on or formally or informally participating in any determinations regarding Plaintiff's grievance.

270.   Defendant Surfield was chair of the Plaintiff's review committee during the 2011 – 2012 Academic Year ("AY") and an elected official of the SVSUFA.

271.   Defendant Tuttle was a member of the Plaintiff's review committee during the 2011 – 2012 AY and an elected official of the SVSUFA during the period in which Plaintiff requested SVSUFA pursue Plaintiff's grievances.

272.   Defendant French was a member of the Plaintiff's review committee during the 2012 – 2013 AY and the Treasurer of the SVSUFA as well as a member of the SVSUFA Executive Board.

273.   In addition to serving as reviewers on Plaintiff's performance review for 2010 – 2011, Defendants' Bangert and Bishop were also members of the Faculty Association Committee for Contract Grievances ("FA Grievance Committee") which is the committee charged with providing "information and recommendations to the Executive Baord and general membership regarding tenure…" including Plaintiff's grievance and appeal of denial of grievance. (See, SVSUFA Standing Rules.)

274.   Defendants' Bangert and Bishop were on the SVSUFA Grievance Committee that was charged with recommending whether or not to pursue Plaintiff's grievances with SVSU.

275.   According to SVSUFA's Constitution and Standing Rules, the SVSUFA Grievance Committee makes recommendations to the SVSUFA Executive Board regarding whether to pursue Plaintiff's grievances. Defendants' Bangert and Bishop were not only members of Plaintiff's 2010 -2011 review committee, but Defendants' Bangert and Bishop were also on the SVSUFA Grievance Committee charged with making recommendations as to whether or not to pursue Plaintiff's grievances

107

and Defendants' Bangert and Bishop were also on the SVSUFA

Executive Board which made the decision not to pursue Plaintiff's

grievances and then later those same Defendants' and that same

SVSUFA Executive Board decided not to grant Plaintiff's appeal of the

SVSUFA's decision not to pursue Plaintiff's grievances.

276.   Section K of the SVSUFA CBA provides an extensive array of

grievance procedures including informal presentation of grievances,

presenting the grievance to the Vice President of Academic Affairs, and

finally to a grievance resolution committee.

277.   Defendant SVSUFA failed to take any of the aforementioned steps

under Section K of the CBA to pursue the Plaintiff's grievance.

278.   Plaintiff was presented with no evidence that the SVSUFA or MEA

even investigated the Plaintiff's grievances or their merit. Nor did

SVSUFA or MEA present Plaintiff with any evidence of a reasoned or

rational basis for the decision not to pursue any of Plaintiff's grievances.

279.   Defendants' SVSUFA, Stroebel, Bangert, Lane, Bishop, French, and

Tuttle allowed SVSU to unilaterally change the CBA by not addressing

or grieving SVSU's material breaches of the CBA in its treatment of

108

Plaintiff.

280.   Defendant SVSUFA knowingly allowed SVSU to clearly, blatantly, and materially breach the CBA to the detriment of the Plaintiff .

281.   Defendant SVSUFA presents the only avenue Plaintiff is allowed by the CBA to grieve a decision by SVSU.

282.   Defendants' SVSUFA  and Stroebel allowed the same parties that sat on Plaintiff's review committees to participate, formally or informally, and influence, formally or informally, their determinations not to pursue Plaintiff's grievances.

283.   Defendant Stroebel invited Plaintiff to a meeting with MEA legal counsel in or about July or August of 2013 wherein Defendant Stroebel told Plaintiff that the reason the Plaintiff was not granted tenure and the reason the SVSUFA would not pursue Plaintiff's grievances was not based on Plaintiff's performance but instead was solely due to Defendants' Bachand, Wetmore, Bishop, Bangert, Lane, French, Tuttle, and Surfield's perception that Plaintiff "did not want to play the game" or "was not going to play ball" with the Defendants.

284.   Defendant Robert Lane, as President of SVSUFA, had a conflict of

interest and did not represent Plaintiff's best interests in any respect.

    A. Representing SVSUFA, Defendant Lane attended the Plaintiff's correction plan review meeting in April 2011.

    B. Defendant Lane failed then and at all times afterward to advocate for the Plaintiff's interest in having SVSU follow the terms of the CBA regarding the correction plan.

    C. Even though Defendant Lane was notified by Defendant Bachand in September 2011 (before the Plaintiff was notified) that SVSU planned to unilaterally negate and make moot the provisions of the CBA related to the correction plan, Defendant Lane and the SVSUFA and MEA took no actions to notify Plaintiff and took no action to represent Plaintiff's interests regarding SVSU's intent to wrongfully skip the correction plan provisions of the CBA.

285.   Defendant Shaun Bangert was a member of the Plaintiff's 2011 – 2011 review team and an officer with the SVSUFA.

    A. Defendant Bangert was present at Plaintiff's first meeting with Defendants' MEA and Strobel on May 7, 2014.

110

B. Defendant Bangert became President of SVSUFA on July 1, 2013 and therefore was the chair of the Executive Committee which is the same Committee that decided not to pursue Plaintiff's grievance.

C. Defendant Bangert was present at Plaintiff's meeting with the SVSUFA Executive Board meeting on January 17, 2014 and was clearly influencing the Executive Board's decision not to support Plaintiff's grievances.

D. Defendant Bangert had a clear conflict of interest and her bias unfairly, and maliciously influenced SVSUFA's and MEA's determinations not to pursue Plaintiff's grievances and thus constitute a breach of the duty of fair representation.

286.   Defendant Bishop was the chair of Plaintiff's 2010 – 2011 review committee and an officer with the SVSUFA at the time.

E. Defendant Bishop had a clear conflict of interest but was present during the Executive Board meeting in which Plaintiff submitted an in person appeal and Defendant Bishop exercised wrongful and undue influence over other Executive Board

111

members.

287.   Defendants' Wetmore, Bishop, Bachand, and Surfield knew that their false, fraudulent, and malicious statements about Plaintiff that Defendants' placed in Plaintiff's review files, PPC files, and personnel files were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

288.   The SVSUFA and MEA violated their duty of fair representation by treating the plaintiff with hostility, discrimination, arbitrarily, dishonestly, and in bad faith. ("When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty . . . to represent all members fairly." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998).)  ("The exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." (*Humphrey v. Moore*, 375 U.S. 335, 55 LRRM 2031 (1964)). Also, "A breach of the statutory duty of fair representation occurs only when a Union's

112

conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." (Vaca v. Sipes, 386 U.S. 171,190, 64 LRRM 2369, 2376 (1967).)

289.   The failure of SVSUFA and MEA to provide fair representation to the Plaintiff was, more likely than not, tainted because the union handled the proceeding in bad faith, arbitrarily, dishonestly, and in a discriminatory manner. *Vaca*; *Ruzicka v GMC*, 649 F2d 1207 (6th Cir), on remand, 519 F Supp 893 (ED Mich 1981), aff'd, 707 F2d 259 (6th Cir 1983).

290.   Many of the same persons who served on the Plaintiff's pre-tenure and tenure review committees and whom recommended the plaintiff not be granted tenure also serve on the SVSUFA/MEA committees – including the Executive Board – which is the body responsible for the SVSUFA/MEA decision to not pursue the Plaintiff's grievances as filed in May 2013, June 2013, and July 2013. As such, the SVSUFA/MEA actions constituted behavior so far outside a wide range of reasonableness as to be irrational. ("A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of

113

reasonableness,' as to be irrational." *Spellacy v. Airline Pilots Ass'n-Int'l*,
156 F.3d 120, 129 (2dCir. 1998). )

291.   Following SVSU's egregious actions on June 28, 2013 to
immediately terminate Plaintiff – contrary to the clear language of the
CBA – Plaintiff submitted a list of grievances to the SVSUFA/MEA
through their agents Shaun Bangert, President and Saun Strobel.

292.   During a meeting on Tuesday, May 7, 2013, between Plaintiff and
Shaun Bangert and Saun Strobel at the MEA offices, Bangert averred that
she had knowledge that SVSU was going to be treating Plaintiff
differently than other faculty members that had previously been denied
tenure. Bangert stated something along the lines of "PPC review…but I
know that something else is going to happen, just because, well, I know"
which indicates that the President of the SVSUFA had knowledge that
SVSU intended to treat the Plaintiff differently, with hostility,
discriminatory intent, and with malice. Defendant Bangert refused to
disclose anymore to the Plaintiff.

293.   Given that Defendant Bangert served on the Plaintiff's 2010 – 2011
pre-tenure review committee, the SVSUFA and MEA's assignment of

114

Bangert to represent the Plaintiff's grievances is a clear and direct conflict of interest.

294.   Shortly after Plaintiff submitted the list of grievances to the SVSUFA/MEA, Robert Lane, Past President of SVSUFA sent an email to Saun Strobel arguing that the SVSUFA should not consider the Plaintiff's grievances.

295.   During a meeting in August 2013, Saun Strobel acknowledged that Plaintiff had a strong and meritorious basis for a grievance due to SVSU's breach of contract for failure to provide notice by November 1, 2012 to Plaintiff in accordance with the CBA.

296.   Defendant SVSUFA failed to not only follow the grievance procedure contained in the CBA, the SVSUFA and MEA failed to even approach SVSU with Plaintiff's grievances and thereby failed to perform even ministerial acts on the Plaintiff's behalf. ("A Union breaches its duty if it fails to perform ministerial acts on a grievant's behalf.", *Zuniga v. United Can Co.,* 812 F.2d 443, 124 LRRM 2888 (9th Cir. 1987).)

297.   Defendant SVSUFA also failed to follow the informal dispute resolution provisions of the CBA by not engaging in any form of

information dispute resolution on behalf of the Plaintiff.

298.   The SVSUFA and MEA's failure to act in a timely fashion on Plaintiff's grievances violate the duty of Fair Representation by precluding grievant from seeking remedies through alternate means and forums. (Failure to notify grievant that grievance has been dropped may violate Duty of Fair Representation because failure may preclude grievant from seeking an alternative forum. *Willets v. Ford Motor Co.*, 583 F.2d 852, 99 LRRM 2399 (6th Cir. 1978).)

   A. Plaintiff filed grievance with SVSUFA and MEA on May 1, 2013. SVSUFA and MEA did not respond to Plaintiff until a letter dated September 30, 2013 stated that the SVSUFA decided not to pursue arbitration on Plaintiff's behalf. This means it was over 5 months between the time Plaintiff filed the grievance and the SVSUFA even bothered to respond to Plaintiff.

   B. Plaintiff then filed an appeal of the SVSUFA's decision not to arbitrate on October 29, 2013 and subsequently Plaintiff spoke at the SVSUFA January 17, 2014 Executive Committee Meeting on the SVSU campus. The SVSUFA did not even bother to notify

116

the Plaintiff as to the Executive Committee's decision to deny
the appeal until a week (April 26, 2014) after being prodded by
the Plaintiff by email on April 20, 2014 to disclose the SVSUFA
decision. This lack of candor and diligent pursuit of the
Plaintiff's grievances is evidence of the SVSUFA and MEA's
hostility, bias, malice, and actions taken in bad faith against the
Plaintiff. ("Actions taken in bad faith violate the Duty of Fair
Representation." *Lewis v. Tuscan Dairy Farms*, 25 F.3d 1138, 146
LRRM 2601 (2d Cir. 1994).)

299.   SVSUFA's clear breach of the duty of fair representation
constitutes an unfair and invidious labor practice. ("The National Labor
Relations Board held that a Union's breach of the duty of fair
representation may constitute an unfair labor practice under Section
8(b)(1)(A) of National Labor Relations Act, since Section 7 of the Act
gives employees the right to be free from unfair or invidious treatment
by their exclusive representative. *Miranda Fuel Co.*, 140 NLRB 181, 51
LRRM 1584 (1962), enf, denied, 326 F.2d 172, 54 LRRM 2715 (2d Cir.
1963). 9 CH1 11001397.1. See also, *Graphic Communication Workers Local*

117

*388 & District 2*, 287 NLRB 1128, 128 LRRM 1176 (1988).)

300.   During a meeting in August 2013 Defendant Strobel stated that the reason the review committees and the SVSUFA would not support Plaintiff's grievances were NOT due to the Plaintiff's inadequate job performance, but instead was because the Plaintiff did not "play along".

301.   In September 2013, Defendant SVSUFA notified the Plaintiff that the SVSUFA would not pursue Plaintiff's grievances.

302.   Plaintiff timely appealed Defendant SVSUFA's determination not to pursue grievances in October 2013.

303.   On January 17, 2014, Plaintiff was invited to the SVSUFA Executive Board meeting on the SVSU campus to appeal, in person, the SVSUFA Executive Board's decision not to pursue the Plaintiff's grievance. At that meeting were numerous faculty members who also sat on the Plaintiff's review committees. Those faculty members, including Stewart French, Deborah Bishop, Shaun Bangert, and Christopher Surfield were openly hostile to the Plaintiff and clearly able to sway the Executive Board's decision to deny Plaintiff's appeal.

  A. Serving on the Plaintiff's review committee and being formally

or informally involved in the SVSUFA Executive Board's decision to deny the Plaintiff's grievance and the Plaintiff's appeal of such denial is a conflict of interest that taints the SVSUFA's ability to make an informed and unbiased decision regarding Plaintiff's grievances.

B. Serving on the Plaintiff's review committee and being formally or informally involved in the SVSUFA Executive Board's decision to deny the Plaintiff's grievance and the Plaintiff's subsequent appeal of such denial due to personal animus, hostility and malice poison the SVSUFA's decision-making process making it discriminatory, arbitrary, and irrational.

C. The SVSUFA failed to provide the Plaintiff with any analysis regarding the merits of Plaintiff's grievances and was merely handling the grievance in a "perfunctory manner, with caprice" and without "rational explanation". (*Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)) (internal quotations omitted). This Court has found conduct arbitrary where a union "handles a grievance in a

'perfunctory' manner, with caprice or without rational explanation.")

304.   Defendant Bangert, in her capacity as President of SVSUFA and Chair of the Executive Board and former Chair of the SVSUFA Grievance Committee; did not inform the Plaintiff until April 26, 2014, that the SVSUFA Executive Board denied Plaintiff's appeal of SVSUFA's previous denial to pursue Plaintiff's grievances. *Knoke v East Jackson Pub Sch Dist*, 201 Mich App 480, 506 NW2d 878 (1993).

305.   Upon information and belief, no other candidate for tenure who was the victim of so many material breaches of the CBA has had their grievance withdrawn by the SVSUFA Executive Committee.

306.   SVSUFA had a legal obligation to act "without fraud; bad faith; hostility; discrimination; arbitrariness; caprice; gross nonfeasance; collusion; bias; prejudice; willful, wanton, wrongful, and malicious refusal; personal spite; ill action; or gross abuse of its discretion in processing or refusing to process a member's grievance."

307.   SVSUFA's Executive Board exercised bad faith, hostility, discrimination, arbitrariness, caprice, gross nonfeasance, collusion, bias,

prejudice, willful, wanton, wrongful and malicious refusal and gross

abuse of its discretion when it made the decision to not pursue Plaintiff's

grievances.

308.   Upon information and belief, no other candidate for tenure who

was the victim of so many material breaches of the CBA has been denied

their appeal of the SVSUFA Executive Committee decision to withdraw

the grievance.

## COUNT 11.  DENIAL OF PROCEDURAL DUE PROCESS AND TAKING OF LIBERTY AND PROPERTY INTERESTS

309.   The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

310.   Plaintiff had a protected property interest in her employment.

311.   Plaintiff had a protected liberty interest in her employment.

312.   Defendants' actions in denying Plaintiff tenure because of or on the

basis of her disability abridge her right to equal protection of the laws in

violation of the Fourteenth Amendment to the U.S. Constitution.

313.   Defendants' actions in depriving Plaintiff her constitutionally

protected property interest in continued employment absent a pre-

termination hearing or other notice of the grounds for her immediate termination and an opportunity to respond abridged her right to due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.

314.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer substantial damages, including, but not limited to, the loss of wages and other benefits he would have received as an employee of Defendant government unit.

315.   Upon information and belief, Defendant government unit has maintained a policy and practice of refusing to grant tenure to disabled persons.

316.   The CBA specified the causes for which Plaintiff would not be granted tenure.

317.   Defendants' reviews of Plaintiff's performance did not objectively measure Plaintiff 's performance as specified in the CBA.

318.   Plaintiff had a legitimate expectation that if Plaintiff met the objective criteria set forth in the CBA, Plaintiff would be granted tenure.

319.   Even if Plaintiff was not granted tenure, Plaintiff had a legitimate

expectation that Defendants' would comply with the clear language of the CBA.

320.   This claim is timely filed and not barred by the statute of limitations.

321.   Plaintiff sent Defendant Bachand a memo on March 20, 2013 specifically requesting a hearing in front of the PPC. (See **Exhibit 5**.)

322.   Defendant Bachand never responded to Plaintiff's memo of March 20, 2013 specifically requesting a hearing.

323.   Plaintiff was never afforded a hearing.

324.   Defendant Bachand sent Plaintiff a letter on June 28, 2013 indicating that SVSU intended to take disciplinary action against Plaintiff.

325.   Without notice or opportunity to comment, within 4 hours of Defendant Bachand sending Plaintiff the June 28, 2013 disciplinary letter, Defendant Bachand sent Plaintiff a "termination" letter.

326.   Plaintiff was not given an opportunity for a hearing regarding the disciplinary action or immediate termination of June 28, 2013.

327.   Defendants' immediate termination of Plaintiff on June 28,2013

breached the CBA.

328.   Plaintiff was not given a hearing regarding the breach(es) of the CBA.

329.   Under the law of the State of Michigan and the United States, Plaintiff enjoyed a constitutionally protected property interest in continued employment, unless and until Plaintiff acted or omitted to act in a manner that was objectively inadequate under the CBA.

330.   On June 28, 2013, acting under color of law and pursuant to his authority as Vice President and Provost, Defendant Bachand informed Plaintiff that her employment had been terminated, effective immediately.

331.   Before depriving Plaintiff of her constitutionally protected property interest in continued employment, Defendants did not conduct a pre-termination hearing or otherwise afford Plaintiff either notice of the grounds for her termination or a meaningful opportunity to respond.

332.   Plaintiff contacted Defendant Bachand by email on March 20, 2013 and specifically requested a hearing but Plaintiff's request was ignored.

333.   Defendants' actions in depriving Plaintiff of her constitutionally

124

protected property interest in continued employment absent a pre-termination hearing or other notice of the grounds for her termination and an opportunity to respond abridge his right to due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.

334.   Plaintiff contacted Defendant Bangert on May 1, 2013 requesting that the SVSUFA file a grievance on behalf of Plaintiff.

335.   Defendant Stroebel and SVSUFA submitted a grievance to Defendants' Bachand, Wetmore, SVSU and the BOC on June 21, 2013. (See **Exhibit 6**.)

336.   Section K 2.1 of the CBA required that Plaintiff be given a hearing with Defendant Wetmore (as the Dean) within 10 days of the filing of the grievance. ("Following submission of the written grievance, a time for meeting between the grievant and a representative from the Association and the dean shall be arranged within ten (10) days after submission of the written grievance. The meeting shall be held not later than ten (10) days after submission of the written grievance." K 2.1)

337.   Plaintiff was never given the opportunity for a meeting/hearing under K2.1.

338.   Section K 2.2. requires that if the grievance is not resolved with the

Dean, then the Vice President for Academic Affairs (Defendant Bachand)

will meet with the grievant within 10 days.

339.   According to this Court, "the applicable statute of limitations" for a

due process claim is three years. "See McCune v. City of Grand Rapids,

842 F.2d 903, 905 (6th Cir.1988) (concluding the applicable statute of

limitations in § 1983 cases is the state's statute of limitations in personal

injury actions); Mich. Comp. Laws § 600.5805(10) (Michigan's three-year

statute of limitations for personal injury actions). " *Awrey v. Gilbertson*,

833 F.Supp.2d 738 (ED Mich, 2011),

340.   As noted in *Awrey v. Gilbertson*, 833 F.Supp.2d 738 (ED Mich, 2011),

"A property interest can be created by a state statute, a formal contract,

or a contract implied from the circumstances." *Ludwig v. Bd. of Trustees of

Ferris State Univ.,* 123 F.3d 404, 409 (6th Cir.1997) (citations omitted).

341.   On March 20, 2013, Plaintiff submitted a memo to Defendant

Bachand, Provost and Vice President of Academic Affairs, titled "H 2.2.3

Appeal to PPC of the Evaluation Record and for Gross Deficiencies in the

Substantive and Procedural Aspects of the Evaluation" wherein the

Plaintiff specified the errors in the evaluation report(s) as well as the various procedural and substantive breaches of the CBA by Defendant SVSU. Plaintiff never received a response and was never allowed a hearing or the right to comment to the PPC or any other committee or Officer of SVSU.

342.    Defendant SVSU's denial of Plaintiff's right to notice and hearing constitutes a violation of due process under the 14th Amendment, and 43 U.S.C. § 1983.

343.    Defendants' SVSU, BOC and Bachand's actions to immediately terminate Plaintiff without notice or opportunity to comment or have a hearing constituted a denial of due process and a deprivation of liberty and property rights.

344.    As a faculty member, Plaintiff was "entitled to the protections of procedural due process, and that this due process right was clearly established at the time [Defendants] acted." *Newman v. Massachusetts*, 884 F.2d 19 (1st Circ. 1989). See also, *Board of Regents v. Roth*, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

345.   Plaintiff was denied procedural due process which "is equivalent to "fundamental fairness," and that "[n]otice and an opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process." *Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir.1988). See *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

346.   Defendants' are not entitled to immunity as they acted with bias, animus, and malice. *Odom v. Wayne County*, 482 Mich 459 (2008). ("[T]here is no immunity when the governmental employee acts maliciously or with a wanton or reckless disregard of the rights of another." Id. at 474)

## COUNT 12. DENIAL OF SUBSTANTIVE DUE PROCESS

347.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

348.   Defendants' also violated Plaintiff's "substantive due process right to be free from arbitrary and capricious decisions affecting her

employment status."  This is particularly true when the stated reason for the Defendants' wrongful actions were "wholly unsupported by a basis in fact. *McEnteggart v. Cataldo,* 451 F.2d 1109, 1111 (1st Cir.1971); *Drown v. Portsmouth School Dist.,* 451 F.2d 1106, 1108 (1st Cir.1971). See also, *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *Dent v. West Virginia*, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir.1988); *Brenna v. Southern Colorado State College*, 589 F.2d 475, 476-77 (10th Cir.1978); *Jeffries v. Turkey Run Consolidated School Dist.*, 492 F.2d 1, 3-4 (7th Cir.1974); *Black v. Sullivan*, 561 F.Supp. 1050, 1061 (D.Me.1983); *Beatham v. Manson*, 369 F.Supp. 783, 789-92 (D.Conn.1973). (Substantive due process protects individuals against arbitrary action by the government.)

349.   Plaintiff was entitled to substantive due process which means that any "state action which deprives [her] of life, liberty, or property much have a rational basis – that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.'" Jeffries v. Turkey Run Consolidated School District, 492 F.2d 1, 3-4 (7th Cir.1974). Korf v. Ball State University, 726 F.2d 1222, (7th Cir. 1984)

350.   Defendants' Bishop, Park, Bangert and Wetmore arbitrarily and capriciously gave Plaintiff negative performance reviews for Academic Year ("AY") 2010 – 2011 that led to Plaintiff being denied tenure.

351.   Defendants' Bishop, Park, Bangert and Wetmore gave Plaintiff negative performance reviews for the completely arbitrary reason that Plaintiff had not moved closer to SVSU since being hired.

352.   When Plaintiff met with Defendants' Lane, Bishop, Wetmore, Park, and Bangert in April 2011, Defendant Bangert stated that 'we aren't saying you are a bad teacher, but you have to be around more'.

353.   Defendant Bangert was then interrupted by Defendant Bishop who stated 'We have to stick to the contract'.

354.   Defendant Park approached Plaintiff approximately 30 minutes after Plaintiff's correction plan meeting and stated directly that he just wanted Plaintiff to be around the office more often which is not a contractual requirement and is therefore an arbitrary and capricious basis for giving Plaintiff a negative review.

355.   During the same meeting in April 2011, Defendant Bishop's personal animus towards that Plaintiff led Bishop to arbitrarily and

capriciously state that she would not accept Plaintiff's correction plan.

356.   Defendant Wetmore also arbitrarily and capriciously stated that she would not accept Plaintiff's correction plan at the April 2011 meeting.

357.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Surfield, Williamson, and Tuttle, in direct contravention of Section H of the CBA, arbitrarily and capriciously ignored Plaintiff's correction plan and instead conducted a full pre-tenure evaluation during the 2011 – 2012 AY.

358.   Defendants' SVSU, BOC, PPC, and Bachand , in direct contravention of Section H of the CBA, arbitrarily and capriciously used what was, according to the CBA, supposed to be a review limited to Plaintiff's correction plan, used Plaintiff's correction plan as a basis for denying Plaintiff tenure.

359.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam knowingly included false statements in Plaintiff's evaluation record.

360.   Plaintiff timely and in writing notified SVSU, BOC, PPC, Bachand, Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam of their false, erroneous, and sometimes fraudulent statements.

361.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam arbitrarily and capriciously refused to correct their knowingly false, erroneous and fraudulent statements.

362.   Defendants' SVSU, BOC, PPC, and Bachand, in direct contravention of the CBA, arbitrarily and capriciously ignored the CBA's provisions for a terminal year after being denied tenure and instead sent Plaintiff an email on Friday, June 28, 2013 notifying her that she would be immediately terminated effective June 30, 2013.

363.   Defendants' SVSU, BOC, PPC, and Bachand's actions against Plaintiff were arbitrary, capricious, and without basis in fact and thereby deprived Plaintiff of her substantive due process rights.

## COUNT 13. VIOLATION OF EQUAL PROTECTION CLAUSE OF 14TH AMENDMENT

364.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

365.   Defendants' SVSU, Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart discriminated against Plaintiff and treated Plaintiff differently than others similarly situated.

366.   Defendants' SVSU, Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart's different, biased, and malicious treatment of Plaintiff resulted in Plaintiff being denied due process under the CBA and state and federal law.

367.   Defendants' SVSU, Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart's different, biased, and malicious treatment of Plaintiff resulted in Plaintiff being deprived of tenure

368.   Defendants' SVSU, Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart's different, biased, and malicious treatment of Plaintiff resulted in Plaintiff being wrongfully terminated .

369.   Defendants' SVSU, Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart's caused the deprivation and were acting under color of law.

133

Flagg Bros v. Brooks 436 U.S. 149 (1978); Harbin-bey v. Rutter, 420 F.3d 571 (6th Circ. 2005).

370.   There was no rational basis for Defendants' SVSU, Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart's hostility, animus, and malice.

371.   Defendants' SVSU, Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart's hostility, animus, and malice went beyond the employment relationship to interfere with Plaintiff's personal and professional life.

372.   Plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Davis v. Prison Health Servs., 679 F.3d 433, 441 (6th Cir. 2012). See also, Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam)).

373.   Both SVSU and SVSUFA in the case at bar breached the CBA which set forth the specific criteria upon which Plaintiff was to be evaluated

374.   As a "class of one", Plaintiff may demonstrate that a government

134

action lacks a rational basis in one of two ways: either by "negativ[ing]" every conceivable basis which might support" the government action or by demonstrating that the challenged government action was motivated by animus or ill-will. Warren v. City of Athens, 411 F.3d 697 (6th Circ., 2005). Klimik v. Kent County Sheriff's Dept., 91 Fed. Appx. 396, 400 (6th Cir.2004) (citations omitted); Bower v. Vill. of Mount Sterling, 44 Fed. Appx. 670, 677-78 (6th Cir.2002). Defendants' animus, hostility, and malice are evidence of the lack of rational basis.

375.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam violated Plaintiff's rights under Section 1981: by evaluating Plaintiff's performance using criteria that is not contained in the CBA; by knowingly including false, erroneous, and fraudulent statements in Plaintiff's evaluation record; by breaching the CBA by accelerating Plaintiff's tenure review by a year, immediately terminating Plaintiff, and failing to follow grievance procedures.

376.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and

135

Byam violated Plaintiff's rights to equal protection under the law in accordance with the 14th Amendment, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

377.   Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment, see, e.g., Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68-69 (2d Cir.2000)."  Patterson v. County of Oneida, 375 F.3d 206, (2nd Cir. 2004).

378.   Section 1983, 42 U.S.C. § 1983, allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

379.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and

Byam deprived Plaintiff of her rights under Section 1983: by evaluating

Plaintiff's performance using criteria that is not contained in the CBA; by

knowingly including false, erroneous, and fraudulent statements in

Plaintiff's evaluation record; by breaching the CBA by accelerating

Plaintiff's tenure review by a year, immediately terminating Plaintiff,

and failing to follow grievance procedures.

380.   Defendants' SVSU, BOC, PPC, Bachand, Wetmore, Bishop,

Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and

Byam deprived Plaintiff of her rights under Section 1983 by

discriminating against Plaintiff for having a qualifying disability under

the ADA.

381.   Upon information and belief, no other similarly situated individual

has been treated as harshly and unfairly as the Plaintiff.

## COUNT 14. WRONGFUL DISCHARGE

382.   The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

383.   Under Michigan law, "wrongful discharge" constitutes "two

alternative theories of enforceability:  the first is grounded solely on

137

contract principles while the second is grounded on public policy considerations". Michigan Causes of Action Formbook ch 62 (Deborah L. Gordon et al eds, ICLE 1996)[1]. Toussaint addressed implied contracts.

384.   Contrary to Defendants' SVSU, Bachand, and Wetmore's statement in their Motion to Dismiss (ECF #13), Plaintiff's wrongful discharge claim is not based on an implied contract.

A. Michigan's Civil Jury Instruction 110.10 "Wrongful Discharge: Good or Just Cause Contract or Policy – Burden of Proof" clearly indicates that a claim for "wrongful discharge" is a valid cause of action even though the employment relationship is based on contract.

B. According to Defendants, there is no purpose for this jury instruction since the Defense asserts that a just cause contract would preclude a claim for wrongful discharge. As for the contract based claims for wrongful discharge Plaintiff's complaint against the Defendants' blatant and knowing breaches of the clear language of the CBA, which resulted in

---

[1] http://www.icle.org/modules/books/chapter.aspx?lib=litigation&book=1996555610&chapter=62

Plaintiff's wrongful discharge, should still stand.

385.   Wrongful discharge is also a tort cause of action in Michigan. Specifically, "Michigan recognizes the tort of negligent evaluation of an employee". Sankar v. Detroit Bd. Of Ed., 160 Mich. App. 470 (1987). See also, Schipani v Ford Motor Co, 102 Mich.App. 606; 302 N.W.2d 307 (1981).

A. Michigan recognizes a "common law duty to perform a contract with ordinary care accompanies every contractual relationship and a negligent performance constitutes a tort as well as a breach of contract. Clark v. Dalman, 379 Mich. 251, 150 N.W.2d 755 (1967). Williams v Polgar, 391 Mich. 6, 19; 215 N.W.2d 149 (1974).

B. Emotional distress damages are available to plaintiffs who recover under a tort theory of wrongful discharge or employment discrimination. See, Phillips v. Butterball Farms Co., 448 Mich. 239, 531 N.W.2d 144 (1995) (plaintiff prevailing in retaliatory discharge case for filing worker's compensation claim rests in tort and therefore she is entitled to emotional

distress damages in addition to various economic damages).

C. Defendants' discharge of Plaintiff and immediate termination was related to Plaintiff's complaint to the SVSU HR Director that Plaintiff was the victim of discrimination based on Plaintiff's disability, or in the alternative, based on Plaintiff's request to the SVSUFA to pursue a grievance against SVSU on behalf of Plaintiff.

D. Defendants' act of discharge and immediate termination of Plaintiff were contrary to the plain language of the CBA

E. Defendants' act of discharge and immediate termination of Plaintiff were retaliatory.

F. Plaintiff had a legitimate expectation that Defendants' would abide by the terms of the CBA.

G. Defendants' breaches of the CBA resulted in the Plaintiff being unfairly targeted, discriminated against, retaliated against, and treated with hostility, animus, and malice.

H. Defendants' failure to follow the CBA resulted in the Plaintiff being reviewed based on predetermined, erroneous, and bias

criteria that are wholly inconsistent with the provisions of the CBA.

I. Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious assertions about Plaintiff Defendant and conveyed to SVSU Administration, the PPC, and the BOC through evaluation files, PPC files, personnel files, and discussions were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

J. Defendants' failure to follow the CBA resulted in the Plaintiff being denied tenure.

K. Defendants' failure to follow the CBA resulted in the Plaintiff being terminated immediately contrary to the plain language of the CBA.

## COUNT 15. RETALIATORY ACTIONS AND DISCHARGE IN VIOLATION OF PUBLIC POLICY

386. The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

141

387.   Defendants' SVSU, SVSUFA, BOC, PPC, Bachand, Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam breached portions of the CBA knowingly and intentionally and as a means of retaliating against the Plaintiff.

388.   Defendants' SVSU, SVSUFA, BOC, PPC, Bachand, Wetmore, Bishop, Bangert, Park, Surfield, Williamson, Tuttle, McCartney, French, and Byam tortious acts resulted in Plaintiff's discharge and immediate termination from her job in direct contravention of the CBA.

389.   Defendants' retaliated against Plaintiff in violation of public policy because the Plaintiff complained that she was being discriminated against.

390.   Defendants' retaliated against Plaintiff in violation of public policy because the Plaintiff requested that the SVSUFA file a grievance challenging the wrongful denial of tenure.

391.   The CBA provides that pre-tenure faculty that are denied tenure the second time are granted a terminal year of employment and their contract is thereafter not renewed.

392.   Defendant SVSU, BOC and Bachand breached the CBA by

142

unilaterally ignoring the provisions of the CBA regarding review of correction plans and thereby accelerated Plaintiff's tenure reviews in violation of the CBA.

393. Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious assertions about Plaintiff and conveyed to the PPC, and the BOC through evaluation files, PPC files, personnel files, and discussions were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

394. Defendant SVSU, BOC and Bachand breached the CBA by not granting Plaintiff a terminal year in accordance with the CBA.

395. Defendants' SVSU, BOC and Bachand breached the CBA by immediately terminating Plaintiff on June 28, 2013 in violation of the CBA's provisions limiting immediate termination.

396. Defendants' SVSU, BOC and Bachand's actions to deny Plaintiff a terminal year as well as to immediately terminate Plaintiff constitute retaliatory discharge in violation of the CBA and public policy.

## COUNT 16. HOSTILE WORK ENVIRONMENT

397.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

398.   Plaintiff asserts a hostile work environment claim that is based on facts that extend over time and therefore the court may consider the past allegations (i.e., the ones outside of the 180 or 300 day limitation) under a continuing violation theory. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002) ("Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

399.   At least one of the acts forming the hostile environment, discipline and immediate termination, was within 300 day period within which Plaintiff filed a complaint with the EEOC.

400.   Upon becoming Dean in 2010, Defendant Wetmore commenced a pattern and practice of behavior targeting Plaintiff. Defendant Wetmore's actions became even more hostile, more malicious, more discriminatory, and more retaliatory after the Plaintiff disclosed in

144

November 2011 that the Plaintiff suffered a severe and persistent disability.

401.   In August 2011, Defendant Wetmore scheduled the Plaintiff to teach 18 credit hours of class during Fall 2011 even though the course load for 2 full semesters is only 24 credit hours.

402.   In August 2011, Defendant Wetmore schedule the Plaintiff to create and teach an entirely new graduate course out of whole cloth without granting Plaintiff any release time as provided for under Section D7 without the Plaintiff's written consent under the CBA.

403.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious assertions about Plaintiff  and conveyed to SVSU Administration, the PPC, and the BOC through evaluation files, PPC files, personnel files, and discussions were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

404.   Defendant Bachand was well aware of the hostile work environment being suffered by Plaintiff as Plaintiff described the

145

difficulties Plaintiff was encountering in August 2011.

405.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield conduct as alleged constitutes a pattern of discriminatory intimidation, ridicule, and insults

406.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield conduct as alleged constitutes hostile and abusive working environment in violation of the ADA and the Rehabilitation Act.

## COUNT 17. DISCRIMINATORY COMPENSATION

407.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

408.   Plaintiff was notified by Defendants' BOC, SVSU, and Bachand on June 28, 2013 that she was being terminated effective June 30, 2013.

409.   Defendants' BOC, SVSU, and Bachand ceased paying Plaintiff's salary effective June 15, 2013.

410.   Defendants' BOC, SVSU, and Bachand adopted a discriminatory compensation decision or other discriminatory practice affecting

146

compensation by ceasing to pay Plaintiff's salary effective June 15, 2013.

411.  Plaintiff became subject to a discriminatory compensation decision or other discriminatory practice affecting compensation when Defendants' BOC, SVSU, and Bachand ceased paying Plaintiff's salary effective June 15, 2013.

412.  Plaintiff's compensation was affected by application of a discriminatory compensation decision or other discriminatory practice when Defendants' BOC, SVSU, and Bachand did not pay Plaintiffs' salary until the end of academic year 2012 -2013 which, according to the CBA, was August 24, 2013.

413.  Plaintiff's compensation was affected by application of a discriminatory compensation decision or other discriminatory practice when Defendants' BOC, SVSU, and Bachand did not pay Plaintiffs' salary for the terminal year provided for in the CBA which, according to the CBA, was August 24, 2014.

414.  Plaintiff was not notified that Defendants' BOC, SVSU, and Bachand intended to cease paying Plaintiff effective June 15, 2013 until after Plaintiff was notified of immediate termination on June 28, 2013.

147

415.   Defendants' BOC, SVSU, and Bachand's intentional act to cease

paying Plaintiff effective June 15, 2013 was a discriminatory act under

the ADA and the Rehabilitation Act.

## COUNT 18. TORTIOUS INTERFERENCE WITH CONTRACT

416.   The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

417.   The Restatement (Second) of Torts §766 provides "One who

intentionally and improperly interferes with the performance of a

contract … between another and a third person by inducing or otherwise

causing the third person not to perform the contract, is subject to liability

to the other for the pecuniary loss resulting to the other from the failure

of the third person to perform the contract."

418.   Defendants' Bachand, Bangert, Bishop, French, Tuttle, Wetmore,

and Surfield were acting pursuant to their own motives and interests

and not in service of their employer, SVSU when Defendants'

knowingly, wrongfully, wantonly, and maliciously placed erroneous and

fraudulent information into Plaintiff's evaluation reports and PPC file.

*Patillo v Equitable Life Assurance Society*, 502 NW2d 696 (1992).

419.   As an employee, Plaintiff had "a manifest interest in the freedom of the employer to exercise its judgment without illegal interference or compulsion, and it is the unjustified interference by third persons that is actionable." *Feaheny v. Caldwell*, 175 Mich App 291, 437 NW2d 358 (1989).

420.   Defendants' acts were "per se wrongful" and "with malice" and "that is unjustified in law for the purpose of invading the contractual rights or business relationship of another" and " 'a wrongful act per se' is an act that is inherently wrongful or an act that can never be justified under any circumstances". Feaheny at 303. See also, Prysak v. RL Polk Co, 193 Mich App 1, 12-13; 483 NW2d 629 (1992)

421.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious assertions about Plaintiff  and conveyed to SVSU Administration, the PPC, and the BOC through evaluation files, PPC files, personnel files, and discussions were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

149

422.   Tortious Interference with contract is an intentional tort the elements of which are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. Badiee, supra at 366-367; Mahrle v Danke, 216 Mich App 343, 350; 549 NW2d 56 (1996); Jim-Bob, Inc v Mehling, 178 Mich App 71, 95-96; 443 NW2d 451 (1989); see also M Civ JI 125.01 (adding the necessary damage element to the cause of action)."  Health Call of Detroit v Atrium Home & Health Care Servs, Inc, 268 Mich App 83, 89-90; 706 NW2d 843 (2005).

423.   It is undisputed there was a contract (a CBA), Plaintiff's complaint lists the specific provisions of the contract that were breached by Defendants.

424.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield acted in concert to tortiously interfere with the fair administration of the CBA with animus and malice and intent to harm Plaintiff's employment relationship with SVSU.

425.   Defendants, by their unwarranted, erroneous, negligent, and/or

intentional, and/ or reckless assertions, interfered with Plaintiffs' ability to be awarded tenure.

426.   As a direct and proximate result of Defendants' actions, Plaintiff have been damaged as stated throughout this complaint.

## COUNT 19. TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY

427.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

428.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield tortiously interfered with Plaintiff's advantageous business relationship with SVSU.

429.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield acted with willful, malicious, and wanton conduct in their intentional or negligent interference with Plaintiff's business relationship with SVSU.

430.   As a result of Defendants' Bachand, Wetmore, Bangert, Lane, Bishop, Surfield, and French's tortious interference with Plaintiff's

151

business relationship with SVSU, Plaintiff has suffered humiliation, outrage, and indignation. Kewin v. Massachusetts Mutual Life, 409 Mich 401 (1980) and McPeak v. McPeak, 233 Mich App 483, 593 NW2d 180 (1999).

431.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious assertions about Plaintiff  and conveyed to SVSU Administration, the PPC, and the BOC through evaluation files, PPC files, personnel files, and discussions were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

432.   Defendants Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, and Surfield made false and erroneous statements, and misrepresentations and placed such wrongful information in Plaintiff's PPC file.

433.   Defendants knew of the CBA and business relationship and expectancy between SVSU and the Plaintiff.

434.   The business relationship and expectancy between SVSU and the

152

Plaintiff had a reasonable likelihood of providing future economic
benefit for the Plaintiff.

435.   By their conduct, Defendants Bachand, Bangert, Lane, Bishop,
French, Tuttle, Wetmore, Park, Byam, and Surfield intentionally and
improperly interfered with the contract and business relationship
between SVSU and the Plaintiff.

436.   Defendants Bachand, Bangert, Lane, Bishop, French, Tuttle,
Wetmore, Park, Byam, and Surfield's tortious actions caused harm to
Plaintiff's reputation and other injuries "not capable of precise
calculation resulting from malicious conduct" of the Defendant. Joba
Construction Co. v. Burns & Roe, Inc, 121 Mich App 615, 329 NW2d 760
(1982).

437.   Defendants Bachand, Bangert, Lane, Bishop, French, Tuttle,
Wetmore, Park, Byam, and Surfield's wrongful actions were intended to,
and did, interfere with contracts, business relationships, and
expectancies between SVSU and the Plaintiff resulting in the denial of
tenure and termination of Plaintiff.

438.   Defendants Bachand, Bangert, Lane, Bishop, French, Tuttle,

Wetmore, Park, Byam, and Surfield's wrongful conduct caused Plaintiff to suffer substantial economic injury, harm to her reputation, harm to her ability to obtain other employment, loss of esteem and standing in the community, and loss of other business opportunities.

## COUNT 20. CIVIL CONSPIRACY

439.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

440.   A civil conspiracy is, "an agreement, or preconceived plan, to do an unlawful act." *Bahr v Miller Bros Creamery*, 365 Mich 415, 427, 112 NW2d 463 (1961).

441.   Defendants Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, and Surfield took concerted actions with the unlawful intended action of wrongfully denying tenure the Plaintiff thereby causing damage to the plaintiff. *Fenestra Inc v Gulf American Land Corp*, 377 Mich 565, 593, 141 NW2d 36 (1966); *Mays v Three Rivers Rubber Corp*, 135 Mich App 42, 48, 352 NW2d 339 (1984). *Chancellor v City of Detroit*, 454 F Supp 2d 645, 663 (ED Mich 2006).

442.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle,

Wetmore, Park, Byam, Williamson, McCartney, and Surfield illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of wrongfully, fraudulently, and maliciously harm plaintiff by placing false and fraudulent information into Plaintiff's evaluation reports and PPC for the purpose of interfering with Plaintiff's continued employment and tenure at SVSU.

443. Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield intentionally and with malice conspired by concerted action to place false allegations and statements in Plaintiff's evaluations for the purpose of causing the Plaintiff to be terminated from employment.

444. Defendants' Bangert, Lane, Bishop, French, Tuttle, Surfield, and Strobel intentionally and with malice conspired by concerted action to deny Plaintiff fair representation by SVSUFA and MEA.

445. Defendants' SVSU, SVSUFA, Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield intentionally and with malice conspired by concerted action to unilaterally ignore the plain language of the CBA so as to be able to deny

155

tenure to the Plaintiff even though objectively the Plaintiff met the standards of the CBA.

446.   Defendants' SVSU, BOC and Bachand, as a whole, were aware of the civil conspiracy to harm Plaintiff and that various Defendants' and others would actively pursue actions to wrongfully cause Plaintiff's wrongful discharge.

447.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious statements about Plaintiff that Defendants' placed in Plaintiff's evaluation files, PPC files, and personnel files were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

448.   Defendants' actions constitute a civil conspiracy. ("A civil conspiracy is, at its root, "an agreement, or preconceived plan, to do an unlawful act." *Bahr v Miller Bros Creamery*, 365 Mich 415, 427, 112 NW2d 463 (1961). See also,  *Fenestra, Inc v Gulf American Land Corp*, 377 Mich 565, 593, 141 NW2d 36 (1966); *Mays v Three Rivers Rubber* Corp, 135 Mich App 42, 48, 352 NW2d 339 (1984).)

156

449.   "Different theories of liability, both tort and nontort, have

supported actions for civil conspiracy. *See, e.g., Durant v Stahlin*, 374 Mich

82, 130 NW2d 910 (1964) (conspiracy to libel); *Brown v Brown*, 338 Mich

492, 61 NW2d 656 (1953), *cert denied,* 348 US 816 (1954) (conspiracy to

alienate affections); *Roche v Blair*, 305 Mich 608, 9 NW2d 861 (1943)

(conspiracy to defraud); *Mourad v Automobile Club Ins Ass'n*, 186 Mich

App 715, 465 NW2d 395 (1991) (conspiracy to commit retaliatory

discharge, although jury's award was vacated on appeal because

underlying retaliatory discharge claim was vacated); *Temborius v Slatkin*,

157 Mich App 587, 403 NW2d 821 (1986) (conspiracy involving

fraudulent practices in sale of motor vehicles); *Borsuk v Wheeler*, 133 Mich

App 403, 349 NW2d 522 (1984) (conspiracy to defraud sellers of

residential property); *Mays v Three Rivers Rubber Corp*, 135 Mich App 42,

352 NW2d 339 (1984) (conspiracy by employer and insurance company

to deprive disabled employee of benefits); *Northern Plumbing & Heating v

Henderson Bros*, 83 Mich App 84, 268 NW2d 296 (1978) (conspiracy to

breach contract); *see also Weberg v Franks*, 229 F3d 514 (6th Cir 2000)

(conspiracy to deny equal protection of law); *Ahlers v Schebil*, 188 F3d 365

(6th Cir 1999) (conspiracy to maliciously prosecute); *Smith v Oakland County Circuit Court*, 344 F Supp 2d 1030 (ED Mich 2004) (conspiracy to deprive plaintiffs of substantive due process); *Canter v Hardy*, 188 F Supp 2d 773 (ED Mich 2002) (conspiracy to violate 42 USC 1983); *Townshend v Hazelroth*, 875 F Supp 1293, 1299 (ED Mich 1995) (conspiracy to "intentionally publicize false and defamatory statements"); *In re Rospatch Secs Litig*, 760 F Supp 1239, 1265 (WD Mich 1991) (conspiracy to breach fiduciary duty)."  Edward H. Pappas et al, Michigan Business Torts ch 10 (ICLE 2d ed 2003).

450.   Defendants, in combination, conspired to deny Plaintiff tenure at SVSU.

451.   This conspiracy stems from and resulted in the illegal, unlawful, or tortious activity of fraud; misrepresentation; intentional infliction of emotional distress; tortious interference with contract and business relationships and expectancies.

452.   As a result of the conspiracy and Defendants' illegal, wrongful, or tortious acts, Plaintiff sustained damages.

453.   As a result of the conspiracy and Defendants' illegal, wrongful,

malicious, and tortious acts, Plaintiff suffered adverse employment

actions, emotional distress, and other harm directly resulting from

Defendants' actions.

454.   "All those who, in pursuance of a common plan to commit a

tortious act, actively take part in it and further it by cooperation or

request, or who lend aid or encouragement to the wrongdoer, or who

ratify and adopt the acts done for their benefit, are equally liable with

him." *Rosenberg v Rosenberg Bros Special Account*, 134 Mich App 342, 354,

351 NW2d 563 (1984) (quoting William L. Prosser, *Handbook of the Law of

Torts* §46, at 292 (4th ed 1971))

## COUNT 21. INVASION OF PRIVACY

455.   The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

456.   In anticipation of the Plaintiff filing a grievance against Defendant

SVSU, Defendants' SVSU, BOC and Bachand launched an investigation

into Plaintiff's private life which was unlawful and unconstitutional.

457.   SVSU's investigation was a breach of the CBA.

458.   SVSU's investigation was directly contrary to SVSU's policy and

159

procedure regarding investigations and background checks on future and current employees.

459.   SVSU has been unable to provide any other example of SVSU launching an investigation into a faculty member's private life.

460.   SVSU allowed a faculty member who was convicted of having child pornography on his SVSU computer to continue his employment with SVSU without an investigation into that faculty member's private life

461.   Defendants' SVSU, BOC and Bachand's investigation into the private life of Plaintiff was highly offensive and would be objectively highly offensive to a reasonable person. (See, Moore v. Univ. Hospitals of Cleveland Medical Center, 2011 WL 5554272, (N.D.Ohio) "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Sustin v. Fee, 69 Ohio St.2d 143, 431 N.E.2d 992, 993–94 (Ohio 1982)

462.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle,

Wetmore, Park, Byam, Williamson, McCartney, and Surfield all made harmful, malicious, and knowingly false statements and assertions for the purpose of inflicting harm on Plaintiff.

463.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield made the harmful statements with hostility, animus, and malice.

464.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious assertions about Plaintiff  and conveyed to SVSU Administration, the PPC, and the BOC through evaluation files, PPC files, personnel files, and discussions were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

465.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield refused to correct any of their false statements and assertions when Plaintiff sent them valid information contradicting their false statements.

466.   Defendants communicated false and objectionable information

161

regarding Plaintiff's denial of tenure and termination to the entire faculty and numerous members of the student body.

467.   There are hundreds of employees at SVSU and thousands of students.  Therefore, Defendants did "broadcast … to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct or beliefs that were false and place the plaintiff in a false position." *Duran v. The Detroit News, Inc.,* 200 Mich App 622; 504 NW2d 715 (1993).

## COUNT 22. CONCERT OF ACTION

468.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

469.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield individually and jointly committed tortious actions against the Plaintiff, including but not limited to, tortious interference with contract, false light, intrusion into seclusion, fraud, infliction of emotional distress, misrepresentation, etc. ("[L]iability attaches for action if two persons commit a tort while acting in concert with one another or pursuant to a

162

common design." *Dow Chemical Co. v. Mahlum*, 114 Nev. 1468, 970 P.2d 98, 111 (1998).

470.   A "concert of action" claim may be used to impose liability on "all defendants [who] acted tortiously pursuant to a common design." *Abel v Eli Lilly & Co*, 418 Mich 311, 338, 343 NW2d 164 (1984); *see also* William L. Prosser, *Prosser and Keeton on the Law of Torts* §46, at 323 (W. Page Keeton ed, 5th ed 1984). Stated another way, "[e]ven if a particular defendant caused no harm himself, that defendant is liable for the harm caused by others because all acted jointly." *Holliday v McKiever*, 156 Mich App 214, 218, 401 NW2d 278 (1986); *see also Cousineau v Ford Motor Co*, 140 Mich App 19, 32, 363 NW2d 721 (1985).

471.   In Michigan, "the concert of action theory was not abolished by tort reform legislation but is limited to proportionate liability in those cases to which tort reform applies." *Lackie v Fulks*, No 231479, 2002 Mich App LEXIS 830 (June 11, 2002) (unpublished).

472.   As a direct and proximate result of Defendants' concerted activities, Plaintiff has sustained and will continue to sustain severe injuries and damages.

163

473.   Due to the concert of action among all of the various Defendants, each Defendant is liable to Plaintiff for these injuries and damages.

## COUNT 23. PROMISSORY ESTOPPEL

474.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

475.   Plaintiff relied to Plaintiff's detriment on the clear language of the CBA and Plaintiff relied on all Defendants' SVSU, SVSUFA, Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield to abide by the CBA.

476.   Defendants' SVSU, SVSUFA, Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield breached the CBA resulting in harm to the Plaintiff.

477.   Allowing Defendants' SVSU, SVSUFA, Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield breaches to stand will continue a to harm Plaintiff.

478.   Defendants' should be estopped from going back on the promises in the CBA.

## COUNT 24. FRAUD AND MISREPRESENTATION

479.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

480.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious assertions about Plaintiff and conveyed to SVSU Administration, the PPC, and the BOC through evaluation files, PPC files, personnel files, and discussions were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

481.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield made material representations about Plaintiff (in writing in Plaintiff's review and PPC records as well as verbally to other faculty, SVSUFA Executive Committee members, members of the PPC and the BOC); the representations were blatantly false (and Defendants' were notified of their falsehoods in writing); Defendants' made the representations recklessly and/or knowing representations were false; Defendants' knew

165

that such misrepresentations would be acted upon to the detriment of the Plaintiff; and the Plaintiff was harmed.

482.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield engaged in intentional and fraudulent misrepresentations of Plaintiff's performance with the intent to harm Plaintiff and deprive Plaintiff of tenure and continued employment.

483.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield made numerous and repeated misrepresentations of material facts.

484.   These representations were false when made.

485.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew the representations were false when made.

486.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield recklessly made false representations.

487.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle,

166

Wetmore, Park, Byam, Williamson, McCartney, and Surfield made the representation with the intent that the Plaintiff's reliance on their reviews would adversely impact her employment.

488.   The plaintiff attempted to correct the record but had no choice but to rely upon Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield misrepresentations.

489.   The plaintiff was damaged as a result of relying upon Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield's misrepresentations.

490.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield made material misrepresentations about Plaintiff's performance; the representations were false; the defendant had a business and professional duty of care to provide accurate information to the PPC; the Plaintiff suffered harm as a result.  *Mickam v Joseph Louis Palace Trust*, 849 F Supp 516 (ED Mich 1994)

491.   Defendant McCartney is a licensed Certified Public Accountant

and as a licensed professional McCartney has the highest duty of care to provide accurate and truthful information.

492.   "[I]n Michigan, even without a fiduciary relationship, a party is under a duty to use diligence in making a complete disclosure of facts where partial disclosure may convey false impressions and mislead the plaintiff. Such half-truths or nondisclosures are considered to be concealment of facts and, therefore, misrepresentations." *Great American Ins Co v Dunn Corp*, 580 F Supp 1287, 1289 (WD Mich 1984)

## COUNT 25. SILENT FRAUD

493.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

494.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield prepared false and misleading reports, concealed true facts about Plaintiff's actual performance, and knew that Defendants' SVSU, BOC and SVSUFA would rely upon these fraudulent misrepresentations.

495.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield concealed

168

important factual information regarding Plaintiff's performance, even after notified by Plaintiff of Defendants' misrepresentations and omissions. Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious assertions about Plaintiff  and conveyed to SVSU Administration, the PPC, and the BOC through evaluation files, PPC files, personnel files, and discussions were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

496.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield knew that their false, fraudulent, and malicious statements about Plaintiff that Defendants' placed in Plaintiff's review files, PPC files, and personnel files were directly contrary to the statements Defendants' were certifying as true and correct to the AACSB.

497.   Defendants' Bachand, Bangert, Lane, Bishop, French, Tuttle, Wetmore, Park, Byam, Williamson, McCartney, and Surfield concealed that the information they conveyed to the PPC was contrary to the

169

information that was conveyed to AACSB.

498.   Defendants had a business and professional duty to make a truthful disclosure of Plaintiff's performance and to require that the evaluation report accurately reflect their views of the Plaintiff's performance.

499.   Michigan law imposes a duty to disclose pertinent facts when there is a fiduciary relationship as when members of the Executive Board of the SVSUFA fail to disclose the truth to the rest of the Executive Board.

500.   Silent fraud does not require affirmative misrepresentations in that liability attaches for fraudulent concealment and for failing to disclose facts that the Defendant had a business or professional duty to disclose. *Hord v Environmental Research Inst*, 463 Mich 399, 412–413, 617 NW2d 543 (2000) (failure to disclose pursuant to legal duty may give rise to claim for silent fraud); *United States Fid & Guar Co v Black*, 412 Mich 99, 125, 313 NW2d 77 (1981) (silent fraud may be "consummated by suppression of facts and of the truth, as well as by open false assertions" if there is "a legal or equitable duty of disclosure" (citing *Fred Macey Co v Macey*, 143 Mich 138, 153, 106 NW 722 (1906), and 37 Am Jur 2d *Fraud and Deceit*

§146 (1968)).

501.   Plaintiff suffered harm as a result of Defendant's silent fraud

actions.

## COUNT 26. INFLICTION OF EMOTIONAL DISTRESS

502.   The facts and allegations of all other paragraphs are realleged and

incorporated herein by reference.

503.   Defendants' conduct was so reckless that 'any reasonable person

would know that emotional distress would result.'"); *Moore v City of*

*Detroit*, 252 Mich App 384, 387, 652 NW2d 688 (2002); *Doe v Mills*, 212

Mich App 73, 536 NW2d 824 (1995); *Linebaugh v Sheraton Michigan Corp*,

198 Mich App 335, 497 NW2d 585 (1993).

504.   Defendants' hostile, wrongful, malicious and retaliatory conduct

towards Plaintiff created an unreasonable risk of causing the Plaintiff

emotional distress.

505.   The Plaintiff's emotional distress was foreseeable.

506.   The Plaintiff's emotional distress was severe enough so as to result

in illness or bodily harm.

507.   Defendants' actions caused Plaintiff serious emotional distress

171

resulting in physical and mental symptoms requiring medication and physician treatment.

508.   Defendants' actions caused such emotional distress as to exacerbate Plaintiff's disability.

509.   Defendants acted with malice against the plaintiff.

510.   Defendants' Bangert, Bishop, and Wetmore, during a meeting in April 2011, acted with hostility, animus and malice towards Plaintiff.

511.   During the April 2011 meeting, Defendants' Bishop and Wetmore were openly angry and hostile to Plaintiff because Plaintiff had submitted a correction plan in accordance with the provisions of the CBA.

512.   Defendant Bishop was so hostile as to state that the correction plan should not be allowed or accepted.

513.   During the April 2011 meeting, Defendant Bangert stated "We are not saying you are a bad teacher, we are just giving you some helpful tips." Defendant Bangert also started to make a comment about the College being concerned that Plaintiff hadn't moved closer to campus but Bangert was stopped by Defendant Bishop who said "No. We don't

172

want to talk about that. It isn't in the contract."

514.   Although another faculty member, Dr. Park was present at the April 2011 was silent during the meeting, in the hallway a few minutes afterwards he approached the Plaintiff and in an almost apologetic manner and stated that he just wanted to see Plaintiff around the halls more often.

515.   Defendant Wetmore describes verbally and in writings placed in Plaintiff's record, as Plaintiff's "campus visibility" and complains that Plaintiff's campus visibility is inadequate even though there is no standard or requirement for campus visibility in the CBA.

516.   "Campus visibility" is certainly not grounds under the CBA for denying tenure or terminating faculty, but Defendant Wetmore decided, with malice to make it her personal mission to make certain that Plaintiff did not get tenure and was terminated.

517.   Defendant Wetmore, as Dean of CBM, intentionally and maliciously refused to place Plaintiff on any SVSU committees knowing that failure to serve on such committees would harm Plaintiff's chances of obtaining tenure.

518.   Defendant Bishop intentionally and maliciously took steps to assure that SVSU would not grant Plaintiff tenure and that the SVSUFA would not pursue any of Plaintiff's grievances.

519.   Defendant Surfield intentionally and maliciously wrote falsehoods into Plaintiff's employment record in an effort to assure that Plaintiff would be denied tenure and Plaintiff's employment would be terminated.

520.   In a review report, Defendant Surfield viciously attacked Plaintiff's use of multiple choice questions on exams even though one of the primary purposes of the course was to help prepare accounting students for the CPA exam – and the CPA exam is a multiple choice test – and Plaintiff's exams were intentionally designed to prepare students for the test.

521.   Defendant Surfield maliciously and with animus presented a skewed and extremely narrative in Plaintiff's review report that inaccurately characterized Plaintiff's absences from class as demonstrating a lack of rigor when in fact Plaintiff was suffering from illness and disability at the time and proper notifications under the CBA.

174

522.   Defendant Surfield intentionally misrepresented Plaintiff's publication and record of scholarship.

523.   Defendants' malice created a hostile work environment for the Plaintiff.

524.   Defendants' Bishop, Surfield, Wetmore, Bangert, and Stewart intentionally and maliciously conspired to propagate falsehoods about Plaintiff so as to harm Plaintiff's chances at tenure and continued employment.

525.   Defendants' Wetmore, Surfield, Bishop, Bangert and Stewart acted with malice to malign and place Plaintiff in false light even though it was Defendants' that were wantonly, knowingly, and blatantly breaching the CBA.

526.   Defendants' Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart's malice invalidates and makes void any privilege any of the Defendants' may otherwise have had as employees of SVSU.

527.   Defendants' Bachand, Wetmore, Surfield, Bishop, Bangert, and Stewart's civil conspiracy, malice, bad faith, and fraud take their actions outside any privilege that could otherwise apply under Michigan's

Government Tort Liability Act ("GTLA") MCL § 691.1407.

528.   As described in *Chambers v. City of Detroit*, 786 F. Supp. 2d 1253 (ED Mich, 2011), (hereinafter "Chambers") absolute sovereign immunity does not apply to any of the Defendants' because absolute sovereign immunity only applies "if he/she is a judge, legislator, or the highest-ranking appointed executive official at any level of government.

529.   According to *Chambers*, individual governmental immunity does not apply because Defendants' were acting in bad faith and with malice. Where "Bad faith is defined by malicious intent, or willful and corrupt misconduct" which is precisely the manner in which Defendants' acted against Plaintiff.

530.   Michigan's Court of Appeals "has adopted the definition of intentional infliction of emotional distress found in 1 Restatement Torts, 2d, § 46, p. 71, which provides that "[one] who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Early Detection Center, PC v New York Life Ins Co*, 157 Mich App 618, 625, 403

NW2d 830 (1986).

531.   Defendants' conduct was so outrageous and extreme that it went "beyond all possible bounds of decency" and would be "regarded as atrocious and utterly intolerable in a civilized community." *Linebaugh v Sheraton Michigan Corp*, 198 Mich App 335, 342, 497 NW2d 585 (1993).

532.   Defendant's conduct was intentional.

533.   Defendant's conduct was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

534.   Defendant's conduct was for an ulterior motive or purpose.

535.   Defendant's conduct resulted in severe and serious emotional distress.

536.   As a direct and proximate result of Defendant's conduct, Plaintiffs have been damaged in the manner outlined above.

537.   The Defendant's hostile, wrongful, malicious and retaliatory conduct towards Plaintiff was the cause of Plaintiff's distress and harm.

538.   The "extreme and outrageous" conduct of Defendants to intentionally work towards assuring that Plaintiff was denied tenure, did result in Plaintiff being denied tenure and caused serious emotional

distress in Plaintiff.

539.   The emotional distress caused by Defendants has caused frequent and extreme exacerbations of Plaintiff's respiratory disease and disability.

## COUNT 27. COMPELLED SELF-DEFAMATION

540.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

541.   "In the increasingly well-known case of *Lewis v Equitable Life Assurance Soc'y*, 389 NW2d 876, 880 (Minn 1986), four employees who were told they were being discharged for "gross insubordination" recovered a substantial verdict, including punitive damages, against their former employer under a theory of compelled self-defamation. The court reasoned that the employees would probably be compelled to discuss the reasons they were given for their terminations with prospective employers. The court stated that liability for defamation existed because those statements, which they could not refuse to share, were false and malicious."  Employment Litigation in Michigan ch 10 (David B. Calzone et al eds, ICLE 2d ed 2003).

542.   Defendants' wanton, willful, hostile, and malicious acts to deny Plaintiff tenure and employment at SVSU have resulted in Plaintiff being compelled to disclose the terms of Plaintiff's separation from SVSU to potential employers.

543.   Such compelled disclosure has reduced Plaintiff's opportunities for other employment.

544.   Compelling Plaintiff to disclose the terms of Plaintiff's wrongful treatment and termination have harmed Plaintiff.

545.   Plaintiff has applied for numerous jobs since June 28, 2013.

546.   Plaintiff applied for a job at Chrysler Corporation, had an interview, was confident that she had the job until she had to disclose that she had been terminated from SVSU.

**COUNT 28. VIOLATION OF 4TH AND 9TH AMENDMENT RIGHTS**

547.   The facts and allegations of all other paragraphs are realleged and incorporated herein by reference.

548.   The right of persons to be free from unreasonable searches and seizures is guaranteed by the 4th Amendment to the Constitution.

549.   "[A]ny citizen of the United States or other person within the

179

jurisdiction thereof" who has suffered the deprivation of constitutional or certain federal statutory rights by virtue of the conduct of municipal officials or other persons acting under color of state law. 42 USC § 1983.

550.   Defendant SVSU's counsel stated that SVSU is a "political subdivision" of the state and thus a state actor. (See ECF# 13.)

551.   Plaintiff does not concede that SVSU is a political subdivision of the state.

552.   Defendants' SVSU, BOC and Bachand instigated an unlawful investigation into Plaintiff's private life in the Spring of 2013 in an unlawful and malicious attempt to intimidate and harass the Plaintiff and to try to keep the Plaintiff from grieving other wrongful acts by Defendants.

553.   A state actor spying on the private life of a citizen is a violation of the 4th amendment right to be free from unreasonable searches and seizures and a violation of 9th amendment privacy rights.


## RELIEF REQUESTED

**PLAINTIFF REQUESTS** that this court enter judgment against Defendants' in whatever sum to which **Plaintiff** is deemed entitled for

legal damages, equitable damages and remedies, together with costs, interest, and attorney fees, including but not limited to the following:

A. Legal Relief:

1. Compensatory damages in whatever amount Plaintiff is found to be entitled;

2. Exemplary damages in whatever amount Plaintiff is found to be entitled;

3. Punitive damages in whatever amount Plaintiff is found to be entitled;

4. An award of interest, costs, reasonable attorney fees, and expert witness fees.

B. Equitable Relief:

1. An injunction out of this Court prohibiting any further acts of wrongdoing or retaliation against this plaintiff;

2. Reinstatement as an Associate Professor with tenure;

3. Compensatory damages;

4. Punitive damages for emotional distress and harm to reputation;

5. An award of interest, costs and reasonable attorney fees; and,

6.   Whatever other equitable relief appears appropriate at the

time of final judgment.

PLAINTIFF REQUESTS trial by jury on all issues so triable.

/S/_____

**R.L. Ross**
**R.L. Ross (P53013)**
**29106 Glencastle Drive**
**Farmington Hills, MI 48336**
**(248) 721-9760**

**Dated:  February 2, 2015**

## JURY DEMAND

Plaintiff **R.L. Ross** demands a trial by jury of all issues so triable in this cause of action.

_/s/_ _____
**R.L. Ross**
**R.L. Ross (P53013)**
**29106 Glencastle Drive**
**Farmington Hills, MI**
**48336**
**(248) 721-9760**

**Dated:  February 2, 2015**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **R. L. ROSS,** | No. 2:14-cv-14122 |
| Plaintiff, | |
| v. | **JUDGE: Hon. Stephen J. Murphy** |
| **DONALD BACHAND,** *et. al.* | **Mag. Judge R. Steven Whaley** |
| Defendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that on FEBRUARY 2, 2015, I personally used the ECF system to electronically file plaintiff's First Amended Complaint with the Clerk and the Counsel listed below.

Unless notified to do otherwise by defense counsel listed below, I will post, by first class certified mail, a copy of the First Amended Complaint as well as a Notice of Lawsuit and Request to Waive Service of Summons and two Waiver of the Service of Summons Forms to the additional Defendants listed below by February 3, 2015.

| **Counsel for Defendants' Bachand, Wetmore, and SVSU** | **Counsel for Bangert, Lane, Bishop, Surfield, French, Strobel, MEA/SVSUFA** |
|---|---|
| **Jamie Hecht Nisidis** **Braun Kendrick Finkbeiner P.L.C.** **4301 Fashion Square Boulevard** **Saginaw, Michigan 48603** | **Fillipe S. Iorio** **Kalniz, Iorio & Feldstein Co., L.P.A.** **4981 Cascade Rd. S.E.** **Grand Rapids, MI 49546** |

**SURENDER REDDY**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**DAVID ABBS**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**DEBORAH HUNTLEY**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**SCOTT CARMONA**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**ERIK TRUMP**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**CATHY FERGUSON**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**GRETCHEN OWOCKI**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**DAVID GAMEZ**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**PATRICIA CAVANAUGH**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**ERIC GILBERTSON**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**MARCIA SHANNON**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**JEFFREY MARTIN**
**Saginaw Valley State University**
**7400 Bay Road**
**University Center, MI 48710**

**JOHN MOONINGHAM**
**Saginaw Valley State University**
**7400 Bay Road**

**JENEE VELASQUEZ**
**Saginaw Valley State University**
**7400 Bay Road**

1

University Center, MI 48710     University Center, MI 48710


**SUSIE EMOND**     **LEOLA WILSON**
**Saginaw Valley State University**     **Saginaw Valley State University**
**7400 Bay Road**     **7400 Bay Road**
**University Center, MI 48710**     **University Center, MI 48710**

     **JEROME YANTZ**
     **Saginaw Valley State University**
     **7400 Bay Road**
     **University Center, MI 48710**


**By:   /s/ R.L. Ross**
**Plaintiff, Pro Se**
**29106 Glencastle Drive**
**Farmington Hills, MI 48336**
**(248) 721-9760**
**rhondaross@fas.harvard.edu**
**(P53103)**

**Dated:  February 2, 2015**

2