UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

R.L. ROSS,

                Plaintiff,                      Case No. 14-cv-14122

v                                                    Honorable Thomas L. Ludington

DONALD BACHAND, et al.

                Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, DENYING PLAINTIFF'S MOTION FOR JUDICIAL NOTICE, AND CANCELLING HEARING**

On February 2, 2015, Plaintiff R. L. Ross filed an amended complaint against Defendant Saginaw Valley State University and more than thirty individuals affiliated with the university. Ross claims that Defendants violated a plethora of her federal and state law rights when they denied her tenure and terminated her employment.

On February 20, 2015, some of the Defendants (SVSU, David Abbs, Donald Bachand, Scott Carmona, Susie Emond, Cathy Ferguson, David Gamez, Eric Gilbertson, Deborah Huntley, Jeffrey Martin, Jenee Velasquez, Leola Wilson, Jill Wetmore, and Jerome Yantz) filed a motion to dismiss several claims in Ross's amended complaint.[1]  The motion to dismiss will be granted for the reasons outlined below.

**I.**

R.L. Ross was an Assistant Professor at SVSU from January 2008 through June 30, 2013. Am. Compl. ¶ 16.  Although the amended complaint includes limited factual information, the focal point of Ross's claims appears to arise from the denial of tenure in 2012 and 2013 and the

---

[1] These Defendants also filed an answer to Counts 5 (ADA Discrimination), 6 (MPWDCRA Discrimination), 9 (Breach of Collective Bargaining Agreement), 10 (Breach of Duty of Fair Representation), 18 (Tortious Interference with Contract), and 19 (Tortious Interference with a Business Relationship) of Ross's amended complaint on February 23, 2015.  Ans., ECF No. 32.

termination of her employment in June 30, 2013. Ross generally claims that, throughout her time at SVSU, the Defendants conspired to give her poor performance reviews that would result in the denial of tenure. Defendants also made "consistently false and misleading" statements and refused to appoint Ross to SVSU Committees that would help Ross obtain tenure.

After she was denied tenure a second time in May 2013, Ross filed a grievance with the Faculty Association. Ross claims that Defendants commenced an illegal investigation into her private life in an attempt to intimidate her into dropping the grievance. In June 2013, Defendants terminated Ross's employment. In April 2014, Ross filed a charge with EEOC, claiming that Defendants had discriminated against her because of her disability—"severe, persistent asthma". Am. Compl. ¶ 184.

On October 27, 2014, Ross filed her initial complaint against SVSU and numerous individuals affiliated with the school. Ross subsequently amended her complaint on February 2, 2015, adding even more individuals and more claims.

On February 20, 2014, SVSU and several individual Defendants moved to dismiss many of the claims in the amended complaint. The individual Defendants are:

- Donald Bachand, Vice President of Academic Affairs from 2006 through June 30, 2013 & Provost from 2010 through June 30, 2013

- Jill Wetmore, Professor in the Department of Law and Finance in the College of Business and Management from January 2008 through 2010 & Dean of the College of Business and Management from 2010 through June 30, 2013

- Deborah Huntley & Susie Emond, members of the Professional Practices Committee

- David Abbs, Scott Carmona, Cathy Ferguson, David Gamez, Jeffrey Martin, Jenee Velasquez, Leola Wilson, Jerome Yantz, and Eric Gilbertson, members of the SVSU Board of Control.

## II.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain

allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Ross is representing herself *pro se*. However, because Ross is a licensed attorney practicing in this District, her amended complaint is not entitled to the liberal construction generally afforded to the pleadings of *pro se* plaintiffs. *See Sabeti v. Maron*, 2012 WL 2001717 (E.D.N.Y. June 4, 2012) (practicing attorney's complaint not entitled to liberal *pro se* construction); *Foulke v. VA State Police*, 2012 WL 4356692, *1 n.1 (W.D. Va. Sept. 24, 2012) (active member of Virginia bar's complaint not entitled to extra measure of liberal construction); *Zanke-Jodway v. Capital Consultants, Inc.*, 2010 WL 776743 (W.D. Mich. March 3, 2010) (attorney proceeding *pro se* is presumed to be aware of the rules of federal procedure).

### III.

On February 2, 2015, Ross filed a 186-page, 553-paragraph amended complaint that asserted 28 causes of action. Defendants moved to dismiss many of the causes of action based on immunity or for failure to state a claim**,** and the Court will address the issues in the following manner: First, the Court will address the claims that affect Defendant SVSU only. Second, the Court will address the claims affecting the individual Defendants. Finally, the Court will address the claims that apply to both Defendant SVSU and the individual Defendants.

**A.**

Defendant SVSU seeks dismissal of several counts, claiming that (1) it is not a "person" that may be sued pursuant to § 1983 for money damages; (2) it is entitled to immunity from all state tort claims; and (3) Ross has not exhausted her ADA claims.

**i.**

First, Defendant SVSU contends that Ross's claims for violation of procedural due process (Count 11), substantive due process (Count 12), and equal protection (Count 13) against it for money damages must be dismissed because SVSU is not a "person" that may be sued under 42 U.S.C. § 1983.[2] Generally, Ross claims that SVSU violated her due process rights and denied her equal protection when it denied her tenure and terminated her employment without a hearing.

Section 1983 creates a private cause of action for violations of constitutional rights—including Fourteenth Amendment rights—committed by a "person" acting under the color of state law. 42 U.S.C. § 1983. Relying on the statutory text of § 1983, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" when sued for money damages. *Will v. Dep't of State Police*, 491 U.S. 58, 71 (1989);[3] *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) ("[A] State is not a 'person' against whom a § 1983 claim for money damages might be asserted."). Under Michigan law, public universities such as SVSU are considered to be arms of the State. *Hill v. Bd. of Trustees of Michigan State University*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001) (Michigan State University is an arm of the State of Michigan and not a "person" under § 1983; *McPike-McDyess v. Regents of the University of Michigan*, 2015 WL 626769, at *1 (E.D. Mich.

---

[2] Although not cited in her amended complaint, the Court will assume that Ross brought her due process and equal protection claims pursuant to § 1983 because the Fourteenth Amendment does not create a private right of action. *See Smith v. Michigan Dep't of Corrs.*, 765 F. Supp. 2d 973, 981 (E.D. Mich. 2011) ("[I]t is well settled that the rights created thereunder can be enforced through 42 U.S.C. § 1983.").
[3] Although resulting in the same effect as Eleventh Amendment immunity, the *Will* holding "was based principally upon a statutory construction of Section 1983, not the Eleventh Amendment." *Dulai v. Michigan Dep't of Community Health*, 71 Fed. App'x 479, 481 (6th Cir. 2003).

- 4 -

Feb. 12, 2015) ("University of Michigan is an arm of the State of Michigan, and hence is cloaked with sovereign immunity); *Dillon-Barber v. Regents of University of Michigan*, 51 F. App'x 946 (6th Cir. 2002) ("That dismissal was properly granted with prejudice because, as the district court properly pointed out, as an arm of the state, the University is not a "person" under § 1983.") Consequently, Defendants in their official capacities, *i.e.* SVSU, are not "persons" that may be sued for money damages under § 1983.

Additionally, even if SVSU qualified as a "person" subject to suit under § 1983, it would still be entitled to Eleventh Amendment immunity from damages. The Eleventh Amendment provides that:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.

U.S. Const. amend. XI. There are only two exceptions to Eleventh Amendment immunity: (1) the State has waived the immunity or (2) Congress has abrogated the immunity. *Thiokol Corp. v. Dep't of Treas., State of Mich.*, 987 F.2d 376, 381 (6th Cir. 1993). Neither exception applies here because: (1) Michigan has not waived sovereign immunity for state universities, *see Hill*, 182 F. Supp. at 625, and (2) Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983. *Harrison v. Mich.*, 722 F.3d 768, 771 (6th Cir. 2013). Accordingly, the motion to dismiss Ross's § 1983 claims for money damages will be granted.

Defendants acknowledge, however, that they are seeking dismissal of only Ross's claims for money damages under § 1983. Although SVSU cannot be sued for money damages under § 1983, Ross is not barred from pursuing injunctive relief for constitutional violations. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983." *McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 456 n.1 (6th Cir. 2014) (quoting *Will*, 491 U.S. at 71 n.10); *see also Telespectrum, Inc. v. Public Serv. Com'n of Ky.*, 227 F.3d 414, 419 (6th Cir. 2000) (citing *Michigan Bell Tel. Co.*, 202 F.3d 862 (6th Cir. 2000))

("Under the doctrine of *Ex parte Young*, suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment."). To the extent that Ross is seeking injunctive relief against SVSU under § 1983, these claims will not be dismissed.

### ii.

Defendant SVSU next seeks dismissal of all state tort claims, claiming that it is entitled to governmental immunity. Under Michigan law, a governmental agency is immune from tort liability when it exercises or discharges a governmental function. Mich. Comp. Laws § 691.1407(1). A public university such as SVSU is a governmental unit subject to the governmental immunity act. *Kielb v. Wayne State University Bd. of Governors*, 2012 WL 4512532, at *2 (Mich. Ct. App. Oct. 2, 2012) (Wayne State University covered by immunity); *Ward v. Michigan State University*, 782 N.W.2d 514, 519 (Mich. Ct. App. 2010) (Michigan State University covered by immunity); *Maskery v. Bd. of Regents of University of Michigan*, 664 N.W.2d 165, 167 (Mich. 2003) (University of Michigan covered by immunity); *Williams v. Central Michigan University*, 2008 WL 942268, at *4 (Mich. Ct. App. Apr. 8, 2008) (Central Michigan University covered by immunity).

To acquire immunity from tort liability, SVSU must also have been engaged in a governmental function. A governmental function is "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." Mich. Comp. Laws § 691.1404(f). The term "governmental function" is to be broadly construed, and the statutory exceptions are to be narrowly construed. *Horace v. City of Pontiac*, 575 N.W.2d 762, 764 (Mich. 1998). So long as "there [is] *some* constitutional, statutory or other legal basis for the activity in which the governmental agency was engaged," the activity will constitute a governmental function.

Here, Ross's tort claims arise from SVSU's denial of tenure and termination of her employment—both of which are governmental functions. SVSU's board of control has power over the "[g]eneral supervision of the university." Mich. Comp. Laws § 390.711(2)(a). Moreover, the SVSU board of control has the authority to "appoint or remove personnel as the interest of the institution and the generally accepted principles of academic tenure permit or require." Mich. Comp. Laws § 390.15(2). Thus, Michigan statutes authorize SVSU to award and deny tenure and to terminate professors' employment. Accordingly, SVSU is entitled to governmental immunity from Ross's state-law tort claims arising out of the tenure review process and the termination of her employment.

### iii.

SVSU next seeks dismissal of Ross's ADA claims because she has not exhausted her administrative remedies. To exhaust administrative remedies under the ADA, a plaintiff must file an EEOC charge within 180 days of the alleged discrimination (or with the state agency within 300 days). *See* 29 U.S.C. § 626(d); 42 U.S.C. §§ 12117(a) and 2000e-5(e)(1); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Once the EEOC dismisses the charge and issues a right-to-sue letter, the plaintiff has ninety days to file a civil action. *See* 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f)(1). Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of an ADA action because exhaustion of administrative remedies is a condition precedent to an ADA action. *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002).

In her amended complaint, Ross identifies several actions that she alleges were discriminatory, including:

- November 2011: Refusing to put Plaintiff on any SVSU committee
- 2012: Negative written review
- January 2012: Denial of requested accommodation to allow Ross to reschedule office hours

- Denial of requested accommodation to allow online instruction during periods of exacerbation of disability
- January 25, 2012: Refusing to put Plaintiff on any SVSU committee
- Accelerating tenure review process
- Using discriminatory evaulations as a basis to deny tenure
- August 2012: Denial of tenure
- 2013: Negative written review
- May 2013: Denial of tenure
- June 15, 2015: Stopping Plaintiff's pay on June 15, 2013
- June 28, 2013: Termination of Plaintiff's employment
- December 4, 2014: Threatening Rule 11 sanctions
- January 16, 2015: Threatening Rule 11 sanctions

Ross filed her EEOC charge alleging disability discrimination on April 22, 2014. Accordingly, only conduct that occurred within 300 days of the filing can be the basis of her ADA claim, given the ADA's exhaustion requirement and procedures. Three hundred days before April 22, 2014, is June 26, 2013—thus, anything occurring prior to June 26, 2013 is not considered because it is excluded by the statute of limitations.

Ross contends that the 300-day statute of limitations is no bar because she has alleged a hostile work environment; that is, that all of the actions constitute a continuing violation of the ADA. To qualify for tolling under the continuing violations doctrine, a plaintiff must demonstrate either (1) "prior [wrongful] activity that continues into the present" or (2) "a longstanding and demonstrable policy" of unlawful conduct. *Bowerman v. Int'l Union, United Auto., Aeropace and Agricultural Implement Workers of America, Local No. 12*, 646 F.3d 360, 366 (6th Cir. 2011) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). In practice these exceptions are quite narrow. Plaintiffs are not eligible under the first category where the alleged misconduct is discrete or individually actionable, as Ross's alleged actions are. *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003). And the second category is barred to Ross because she cannot "demonstrate something more than the existence of [unlawful] treatment . . ." *Id*. In her amended complaint, Ross merely reiterates that the discriminatory actions were taken in violation of the ADA. However, unless a plaintiff includes evidence that the unlawful conduct

- 8 -

is a "standard operating procedure," *id.* at 269, a plaintiff cannot rely on a continuing violation claim.

As noted above, only three of Defendants' alleged actions fall within this time period: the termination of her employment on June 28, 2013, and the two times that Defendants threatened her with Rule 11 sanctions. Moreover, because she cannot rely on a continuing violation theory, her hostile work environment claim will be dismissed.

### iv.

As part of her ADA claim, Ross contends that SVSU retaliated against her by threatening Rule 11 sections on December 4, 2014, and January 16, 2015. These alleged threats, therefore, were not included in Ross's April 27, 2014 EEOC charge, which was filed more than eight months earlier. Accordingly, Ross has never presented the alleged threats to the EEOC, and therefore she has not exhausted her administrative remedy. *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 721 (6th Cir. 2002) ("Those retaliation claims based on acts subsequent to the filing of that charge, however, were never the subject of an EEOC charge, and therefore were not exhausted."). Consequently, Ross cannot rely on the alleged Rule 11 threats to establish her ADA claims.

### B.

The individual Defendants seek dismissal of many of Ross's claims because (1) the ADA, Rehabilitation Act, and FMLA do not impose individual liability and (2) Ross has not sufficiently pleaded a claim for various tort claims, including wrongful discharge, retaliation in violation of public policy, invasion of privacy, fraud, silent fraud, intentional infliction of emotional distress, compelled self-defamation, and promissory estoppel.

**i.**

The individual Defendants seek to dismiss Ross's ADA, FMLA, and Rehabilitation Act claims against them in the individual capacities. The individual Defendants contend that these statutes do not provide for individual liability for violations.

The Sixth Circuit has repeatedly held that there is no individual liability under the ADA or the Rehabilitation Act. *See Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002) (no individual liability under ADA); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 492 (6th Cir. 2004) (no individual liability under § 504 of the Rehabilitation Act); *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999) (no individual liability under the Rehabilitation Act); *Mitchell v. Chapman*, 343 F.3d 811, 825-26 (6th Cir. 2003) (the FMLA does not provide for individual liability against a public employer); *Diaz v. Michigan Dep't of Corrs.*, 703 F.3d 956, 961 (6th Cir. 2013) (state employees cannot recover from state officials in their individual capacities for alleged violations of the FMLA). Accordingly, Ross's claims against Defendants in their individual capacities for violation of the ADA, FMLA, and Rehabilitation Act will be dismissed with prejudice.

**ii.**

The individual Defendants next seek dismissal of Ross's claim for wrongful discharge. The foundation of Ross's wrongful discharge appears to be the tort of negligent evaluation of an employee.[4] Am. Compl. ¶ 385. Although not at all explained in her amended complaint, it appears that Ross contends that Defendants negligently evaluated her employment record, resulting in the termination of her employment.

However, both the Sixth Circuit and the Michigan Court of Appeals have rejected the theory of negligent evaluation where—as here—the duty arises solely from the employment

---

[4] To the extent that Ross claims that the discharge was wrongful because it violated the CBA or because it violated public policy, it is duplicative of Count 9-Breach of CBA and Count 15-Retaliation in Violation of Public Policy.

contract. *Brock v. Consolidated Biomedical Laboratories*, 817 F.2d 24, 25 (6th Cir. 1987); *Haas v. Montgomery Ward and Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987); *Loftis v. G.T. Products, Inc.*, 167 Mich. App. 787 (1988) (reversing trial court's denial of summary judgment to employer on claim of negligent evaluation of work performance where "plaintiff's complaint does not allege a breach of duty distinct from the alleged breach of the employment contract"). Here, Ross's employment was governed by the CBA, and therefore any duty owed by SVSU arose from the CBA. Accordingly, Ross's claim for wrongful discharge for negligent evaluation will be dismissed with prejudice.

### iii.

The individual Defendants next seek dismissal of Ross's claim for retaliation in violation of public policy. Michigan's general rule regarding termination of an at-will employee is that either party may terminate the employment contract at any time for any or no reason. *See Morrison v. B. Braun Medical, Inc.*, 663 F.3d 251, 256 (6th Cir. 2011). Wrongful termination in violation of public policy is an exception to the at-will employment doctrine. *Jewel v. Chrysler, LLC*, 2014 WL 764660, at *5 (E.D. Mich. Feb. 25, 2014). Here, Ross is not an at-will employee; rather, she had a collective bargaining agreement with SVSU. Accordingly, because she was not an at-will employee, Ross cannot state a claim for retaliation in violation of public policy. Count 15 of Ross's Amended Complaint, as applied against Defendants in their individual and official capacities, will be dismissed.

### iv.

Next, the individual Defendants seek dismissal of Ross's claim for invasion of privacy. It is unclear whether she is proceeding on an "intrusion upon seclusion" theory or a "false light" theory; therefore, both theories will be addressed.

**a.**

To state a claim for intrusion upon seclusion, a plaintiff must show: (1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Lewis v. LeGrow*, 670 N.W.2d 675, 687 (Mich. Ct. App. 2003). "An action for intrusion upon seclusion focuses on the manner in which the information was obtained, not on the information's publication." *Id*. at 687-88.

In her amended complaint, Ross alleges that Defendants "launched an investigation into Plaintiff's private life which was unlawful and unconstitutional," Am. Compl. ¶ 456, and which "was highly offensive and would be objectively highly offensive to a reasonable person." *Id*. ¶ 461. Aside from these legal conclusions, Ross does not describe either the existence of a private subject matter nor the objectionable methods employed by Defendants to obtain that private subject matter. Plaintiff contends that she "requires discovery to identify the scope and extent of the investigation, the precipitating events, responsible parties, the personal information that was gathered and released by D[efendants] . . ." Resp. 22.

Before she is entitled to discovery, Ross must meet the pleading requirements of Federal Rule of Civil Procedure 8. She must do more than recite bare legal conclusions; she must give the Defendants fair notice of her claim and the factual allegations upon which it rests. *Iqbal*, 556 U.S. at 677-78 (a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation.") Here, she has done no more than recite the legal standard (under Ohio law) for intrusion upon seclusion, and therefore she has not sufficiently pleaded a claim for intrusion upon seclusion. To the extent that she claims her life is entitled to general privacy, Ross's privacy ends where it impacts her employment. *See Lewis v. Mt. Morris Tp.*, 2008 WL 243951,

at *4 (E.D. Mich. Jan. 28, 2008) (Plaintiff's "relapse, as a general matter, may be a private affair, but where it impacts enforceable terms of the [employer's last chance agreement] it cannot be a secret. Plaintiff's privacy ends where the reach of the L.C.A. begins.").

**b.**

Likewise, Defendants seek to dismiss Ross's false light invasion of privacy claim because she has not sufficiently stated a claim. Under Michigan law,

> [i]n order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position.

*Duran v. The Detroit News, Inc.*, 504 N.W.2d 715 (1993). Ross does not identify the false and highly objectionable statements that Defendants made. Nor does she allege that those statements were communicated to "a large number of people" as required. Instead, she notes that SVSU has hundreds of employees and thousands of students—though she does not allege that the false and objectionable statements were made to those individuals. Accordingly, Ross's claim for false light invasion of privacy will be dismissed.

**v.**

Defendants next assert that Ross has not sufficiently pleaded a claim for fraud. To state a claim for fraud, a plaintiff must show: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) the defendant knew that the representation was false when it was made, or made it recklessly; (4) the defendant made the representation with the intention that the plaintiff would act on it; (5) the plaintiff acted in reliance on the misrepresentation; and (6) the plaintiff suffered an injury because of that reliance. *Zaremba Equipment, Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 38-39 (2008). Moreover, under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to

'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).

In her amended complaint, Ross alleges that Defendants committed fraud by making "material representations about Plaintiff (in writing in Plaintiff's review and PPC records as well as verbally to other faculty, SVSUFA Executive Committee members, members of the PPC and the BOC) . . . ." Am. Compl. ¶ 481. Ross does not identify the allegedly false statements, or even the general content of the allegedly fraudulent statements. Instead, Ross merely repeats the legal standard for alleging fraud without providing any specific facts to support the assertion. Ross's conclusory assertions do not sufficiently plead a claim for fraud, and this claim will be dismissed. *Buntea v. State Farm Mut. Auto Ins. Co.*, 467 F. Supp. 2d 740, 747 (E.D. Mich. 2006) ("[A] viable fraud claim cannot rest on mere assertions or conclusion and survive a motion to dismiss.").

### vi.

Defendants also seek to dismiss Ross's claim for silent fraud for similar reasons. Ross contends that Defendants committed silent fraud by "prepar[ing] false and misleading reports, concealed true facts about Plaintiff's actual performance, and knew that Defendants SVSU, BOC and SVSUFA would rely upon these fraudulent misrepresentations." Am. Compl. ¶ 494.

Ross has not sufficiently pleaded a claim for silent fraud. She has not identified the time, place, or content of the alleged misrepresentations as required by Rule 9. Therefore, her silent fraud claim against Defendants will be dismissed.

### vii.

Defendants next seek dismissal of Ross's claim for intentional infliction of emotional distress. To establish a prima facie case of intentional infliction of emotional distress under

- 14 -

Michigan law, a plaintiff must establish four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Andrews v. Prudential Securities, Inc.*, 160 F.3d 304, 309 (6th Cir. 1998). The "outrageous conduct" requirement is satisfied only by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (citing *Roberts v. Auto-Owners Ins. Co.*¸374 N.W.2d 905 (Mich. 1985).

Here, Ross has not sufficiently pleaded that Defendants engaged in "outrageous conduct." Ross identifies the following actions as part of the "outrageous conduct":

- "During the April 2011 meeting . . . Wetmore [was] openly angry and hostile to Plaintiff because Plaintiff had submitted a correction plan in accordance with the provisions of the CBA." Am. Compl. ¶ 511.

- Wetmore "complain[ed] that Plaintiff's campus visibility is inadequate even though there is no standard or requirement for campus visibility in the CBA." *Id*. ¶ 515.

- "Defendant Wetmore, as Dean of CBM, intentionally and maliciously refused to place Plaintiff on any SVSU committee knowing that failure to serve on such committees would harm Plaintiff's chances of obtaining tenure." *Id*. ¶ 517.

But these actions are not so extreme in degree as to go beyond all possible bounds of decency. Accordingly, Ross's intentional infliction of emotional distress against Wetmore will be dismissed.[5]

### viii.

Defendants next seek dismissal of Ross's claim for self-defamation. The theory of self-defamation arises from a single Michigan Court of Appeals case, *Grist v. Upjohn Co.*, 168 N.W.2d 389 (Mich. Ct. App. 1969), and it has never been formally recognized by the Michigan Supreme Court. "Self-defamation is not truly a separate theory of tort liability from defamation .

---

[5] Wetmore is the only moving Defendant mentioned by name in the Amended Complaint. As noted throughout this opinion, it is unclear precisely which Defendants Ross is suing in each claim. To the extent that Ross is asserting an intentional infliction of emotional distress claim against any of the other moving Defendants, the claim will likewise be dismissed for failure to state a claim for which relief may be granted.

. . . It is more accurately described as an alternative method of alleging publication." *Forth v. Kroger Co.*, 2010 WL 3937314, at *5 (E.D. Mich. Oct. 5, 2010).

In order to be actionable, a defamatory statement must be false. In her amended complaint, Ross alleges that she has been "compelled to disclose the terms of Plaintiff's separation from SVSU to potential employers." Am. Compl. ¶ 542. More specifically, she alleges that she "applied for a job at Chrysler Corporation, had an interview, was confident that she had the job until she had to disclose that she had been terminated from SVSU." *Id*. ¶ 546. But the statement that SVSU terminated her employment is true, and therefore cannot be an actionable defamatory statement. Accordingly, Ross's claim for self-defamation will be dismissed.

### ix.

Ross's claim for promissory estoppel will be dismissed for a similar reason: all the alleged promises arose out of the CBA itself, not via any promises that arose outside the CBA. "Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel and unjust enrichment." *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996). Here, Defendants have not denied the existence of the CBA, nor have they sought dismissal of Ross's claim pursuant to the CBA. Accordingly, Ross cannot maintain a separate action for promissory estoppel because the CBA contains all the alleged representations at issue.

### C.

Lastly, both Defendant SVSU and the individual Defendants seek dismissal of Ross's claims for violation of the Fourth Amendment, the Ninth Amendment, and Michigan's Elliot-Larsen Civil Rights Act.

**i.**

First, Defendants seek dismissal of Ross's Fourth and Ninth Amendment claims. In her amended complaint, Ross claims that Defendants violated her Fourth and Ninth Amendment rights by "instigat[ing] an unlawful investigation into Plaintiff's private life in the Spring of 2013" and by "spying on the private life of a citizen . . . ." Am. Compl. ¶ 552-553.

The Fourth Amendment provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . . ." The fundamental purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967). Not all government actions are invasive enough to implicate the Fourth Amendment. *United States v. Warshak*, 631 F.3d 266, 284 (6th Cir. 2010).

Here, Ross has not identified the government actions that violated her Fourth Amendment rights. Instead, she once against asserts legal conclusion without any accompanying facts. This does not meet the pleading standards required by the Federal Rules of Civil Procedure, and her Fourth and Ninth Amendment claims will be dismissed for failure to state a claim.

**ii.**

Defendants next seek dismissal of Ross's claims for discrimination and retaliation in violation of Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq*. ("ELCRA"). ELCRA prohibits discrimination and retaliation on the basis of "religion, race, color, national origin, age, sex, height, weight, familial status, or marital status . . . ." Mich. Comp. Laws § 37.2102.

Ross asserts an ELCRA violation claim based not on any of the ten characteristics listed above, but rather on her disability: "Plaintiff's disability was the reason and/or at least one factor

that made a difference in Defendant's decision to terminate Plaintiff from her position as an Assistant Professor." Am. Compl. ¶ 149. "Disability" is not a protected category under ELCRA, however. Therefore, Ross's ELCRA claims will be dismissed.

### IV.

Accordingly, it is **ORDERED** that Defendants Bachand, Wetmore, Huntley, Abbs, Carmona, Ferguson, Gamez, Gilbertson, Martin, Velasquez, Wilson, Yantz, Emond, and Saginaw Valley State University's Motion to Dismiss (ECF No. 30) is **GRANTED**.

It is further **ORDERED** that Ross's claims against Defendants Bachand, Wetmore, Huntley, Abbs, Carmona, Ferguson, Gamez, Gilbertson, Martin, Velasquez, Wilson, Yantz, and Emond in their official capacities are **DISMISSED WITH PREJUDICE** because they are duplicative of Ross's claim against Defendant Saginaw Valley State University.

It is further **ORDERED** that Ross's claims for violation of the Fourteenth Amendment against SVSU and Defendants in their official capacities (Counts 11, 12, and 13) will be dismissed to the extent that Ross seeks to recover money damages.

It is further **ORDERED** that Ross's tort claims against Defendant SVSU and individual Defendants in their official capacities for wrongful discharge (Count 14); public policy retaliation (Count 15); tortious interference with contract (Count 18); tortious interference with a business relationship (Count 19); civil conspiracy (Count 20); invasion of privacy (Count 21); concert of action (Count 22); promissory estoppel (Count 23); fraud (Count 24); silent fraud (Count 25); infliction of emotional distress (Count 26); and compelled self-defamation (Count 27) are **DISMISSED WITH PREJUDICE** because SVSU is entitled to governmental immunity under Michigan law.

It is further **ORDERED** that Ross's claims for invasion of privacy (Count 21); public policy retaliation (Count 15); fraud (Count 24); silent fraud (Count 25); intentional infliction of emotional distress (Count 26); self-defamation (Count 27); violation of the ADA (Counts 1, 2, 3,

16, and 17); violation of FMLA (Count 8); violation of Rehabilitation Act (Counts 7 and 17); promissory estoppel (Count 23); and wrongful discharge (Count 14) against Defendants Bachand, Wetmore, Huntley, Abbs, Carmona, Ferguson, Gamez, Gilbertson, Martin, Velasquez, Wilson, Yantz, and Emond in their individual capacities are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Ross's Fourth Amendment claim (Count 28); Ninth Amendment claim (Count 28); hostile work environment claim (Count 16); and ELCRA violation claim (Count 4) are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Ross's Motion for Judicial Notice (ECF No. 49) is **DENIED**.

It is further **ORDERED** that the motion hearing set for June 18, 2015 is **CANCELLED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: April 20, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 20, 2015.

s/Karri Sandusky  
Karri Sandusky, Acting Case Manager